**In re Dennis ERICKSON and Nanci Erickson and Dennis Erickson, d/b/a Justin Home Builders, Inc., Dennis Erickson Home Builders and D. Erickson Home Builders, Plaintiffs,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE and Minnesota Department of Revenue, Defendants.**

Bankruptcy No. 4–93–744.
Adv. No. 4–93–180.

United States Bankruptcy Court,
D. Minnesota.

Sept. 30, 1994.

Sue Ann Nelson, Molly T. Shields, Mary Jane Miller, Doherty, Rumble & Butler, P.A., Minneapolis, MN, for plaintiffs.

Thomas V. Linguanti, John A. Marrella, U.S. Dept. of Justice, Tax Div., Washington, DC, Francis C. Ling, Minnesota Dept. of Revenue, Tax Litigation Div., St. Paul, MN, for defendants.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for trial on June 17 and 20, 1994. Sue Ann Nelson, Molly Shields and Mary Jane Miller appeared for the plaintiffs. Thomas Linguanti and John A. Marrella appeared for defendant United States of America and Francis C. Ling appeared for defendant State of Minnesota.

This court has jurisdiction pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 1334, 11 U.S.C. § 505 and Local Rule 201. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) & (I).

### The Facts

Dennis Erickson has been involved in carpentry and the home building industry for many years. At the age of twenty or twenty-one, he went out on his own to build frames for residential housing. Erickson has continued to work for himself ever since.

In 1975, Erickson's former bookkeeper sold his "book of business" to Don Klostreich and moved out of the area. Erickson acquiesced to the new relationship and, until 1988, Klostreich was the Ericksons' tax preparer and bookkeeper.

In Erickson's eyes, Klostreich's credibility as a tax preparer and bookkeeper was confirmed when a pre–1984 audit yielded only minor errors in the tax returns Klostreich had prepared for Erickson. Nonetheless, while Klostreich has attended college level business classes and completed a two-month tax preparation course offered by H & R Block, he has received no formal certification as an accountant.[1]

Prior to 1984, Erickson was very involved in all aspects of his house framing business. The foundation of Erickson's success was in performing carpentry and framing work for other general contractors. Whenever possible, Erickson would visit the job sites early in the morning to determine the daily requirements for labor and materials, and to coordinate the timing of his projects in connection with other subcontractors. On average, he employed between four and six carpenters per job site, and, as the employer, he hired and fired employees. While the employees usually provided their own hammers, nailbelts, tape measures and other minor equipment, Erickson supplied nailguns, ladders, generators, trucks and other necessary major equipment.

Dennis Erickson's life changed dramatically in August 1984 when a diving accident left him quadriplegic. While Erickson was at his job sites by 6:00 a.m. before the accident, the new routine of medical care prevented him from leaving his home before noon. In addition, wheelchair confinement restricted his movement around the job sites and within the projects. More and more, Erickson realized that he would have to change the focus of the business if he was to continue to succeed as a home builder.

Erickson's foremen[2] were assigned additional duties and served as Erickson's surrogate eyes and ears on the job sites. The telephone allowed Erickson to keep in constant contact with employees, subcontractors and suppliers. Whenever possible, Erickson drove to the job sites to observe the progress of the projects. In addition, the focus of the business changed from a company devoted

---

1. While these qualifications barely suffice to support a claim of "bookkeeper," Klostreich presented himself through his business cards as a "public accountant." Use of the title "public accountant" would likely cause justifiable confusion in consumers. Upon notification that Klostreich's business cards proclaimed that he was an accountant, the State of Minnesota advised Klostreich that he must discontinue making such claims.

2. While Erickson himself never used the title "foreman" for any of his employees, it was clear that he delegated responsibilities to certain employees in whom he had confidence.

primarily to framing houses for others to a company committed to general contracting and the development of residential housing.

Despite Erickson's admirable personal and business adjustments following his paralysis, major obstacles remained. Routine medical care occupied most of his mornings and the assistance of an aide was required to accomplish even the once routine tasks of reading and writing. Erickson was both squeezed for time and forced to rely on others. Because he had less time available for his business and the work required more time to perform, Erickson began to entertain options that would allow him to delegate some of his business responsibilities.

In 1985, Erickson began to treat his employees as independent contractors for tax purposes. He notified his employees of this change and emphasized the consequences of their new relationship, including the shift in responsibility for income tax withholding and FICA payments. He purchased and used a stamp to imprint this information on the back of the Erickson business payroll checks.[3] Erickson also informed his bookkeeper, Klostreich, of the decision to follow this course. Nevertheless, independent contractor status requires the yearly filing of an IRS Form 1099 for workers earning more than $600 per year. While some of the laborers the Erickson business utilized did not surpass the $600.00 per year threshold, many others did. The IRS, however, has received only scattered filings of 1099s from the Erickson business and neither Erickson nor his bookkeeper, Klostreich, recall ever filing them.

Despite the asserted change in the status of his employees, the structure of the Erickson business remained essentially unchanged. While Erickson began to develop properties and bring in other contractors to perform the electrical, plumbing and other specialties, he maintained a crew to perform the carpentry work. Erickson retained the power to make decisions about hiring and firing these carpenters and no written employment contracts existed. He also maintained control over the quality and quantity of work that his carpenters performed by visiting the job sites and by talking with his foremen.

The carpenters continued to use their own hammers, nailbelts and other minor equipment and Erickson still supplied the majority of the equipment necessary for the completion of the complex, capital intense chores associated with residential home building. Erickson also controlled the hours that the carpenters worked and the laborers continued to be paid an hourly wage through a biweekly paycheck. Unlike the plumbing and electrical contractors Erickson hired, there was no link between the efficiency of the carpenters' work and the amount of profit they could earn. While some carpenters performed work for others, these were essentially "side jobs" done on their own time. The carpenters remained Erickson's employees.

Following Dennis Erickson's accident, Dennis and Nanci Erickson began to run afoul of the April 15th fixed date for the filing of individual tax returns. The Ericksons' federal and state income tax forms were not timely filed for the tax years of 1986, 1987, 1988, 1989 and 1992. The United States, improperly named in this suit as the Commissioner of Internal Revenue Service, and the Minnesota Department of Revenue asserted claims for the income tax deficiencies, penalties and interest for these years.

The United States and the Minnesota Department of Revenue also disputed the characterization of the carpenters and laborers as independent contractors by the Erickson business. The United States asserted claims for Federal Insurance Contribution Act and

---

3. The stamp was imprinted on many of the payroll checks that the Erickson businesses issued. The stamp conveyed the following information: THE UNDERSIGNED WARRANTS HE IS AN INDEPENDENT CONTRACTOR IN CONNECTION WITH LABOR AND/OR MATERIALS FURNISHED BY REASON ON WHICH THIS CHECK IS GIVEN. ENDORSEMENT HEREOF CONSTITUTES INDEMNIFICATION OF MAKER OF THIS CHECK FOR ALL CAUSES, INCLUDING THE PAYMENT OF ALL TAXES.

Federal Unemployment Tax Act taxes that are payable by an employer. In addition, the United States and the State of Minnesota have asserted withholding claims against the Debtors.

On February 5, 1993, the Ericksons filed a bankruptcy petition under Chapter 11. This adversary proceeding is to determine the extent, priority and dischargeability of tax claims that the United States and the State of Minnesota have assessed against the Ericksons for the tax years 1985, 1986, 1987, 1988, 1989 and 1992.

### Assessments by the United States and the State of Minnesota

The IRS, for the United States, assessed income tax deficiencies against the debtors for the tax years 1986, 1987, 1988, 1989 and 1992. The debtors do not contest the amounts assessed for income taxes, only the penalties and interest that the IRS has requested for Erickson's failure to timely file the tax returns. The income taxes, interest on taxes, penalties and interest on penalties are as follows:

#### Federal Income Taxes

|              | 1986       | 1987       | 1988      | 1989     |
|--------------|-----------|-----------|-----------|----------|
| Tax          | 200,070.00 | 112,309.00 | 17,668.00 | 729.00   |
| Int/Tax      | 159,400.28 | 71,153.72  | 8,628.87  | 223.75   |
| § 6651(a)(1) | 40,014.00  | 16,960.00  | 4,619.00  | 6,800.57 |
| § 6651(a)(2) | 15,487.95  | 9,173.98   | 1,550.44  | 1,201.10 |
| Int/Pen      | 31,947.00  | 10,659.69  | 1,875.04  | –0–      |

As of the petition date, the §§ 6651(a)(1)–(2) penalties and interest on penalties for the 1989 income tax was $219.74. In addition, $20,753.00 for 1992 income tax liability was claimed.

The IRS has also asserted that the debtors failed to timely file their W–2 and 1099 forms for the years 1985 through 1989. The IRS demands payment of the taxes and penalties under I.R.C. §§ 6721(a) (failure to file correct information returns) & 6722 (failure to furnish correct payee statements) and interest. The penalties and interest at the petition date are as follows:

#### W–2 & Form 1099

|                        | 1985     | 1986     | 1987     | 1988     | 1989     |
|------------------------|----------|----------|----------|----------|----------|
| §§ 6721(a) & 6722      | 2,372.26 | 6,376.66 | 4,782.50 | 4,888.17 | 8,821.06 |

The IRS also claims FUTA taxes under I.R.C. sections 3301, *et seq.*, for the tax years 1985, 1987, 1988 and 1989. As a consequence, the IRS also claims interest on the unpaid FUTA taxes, I.R.C. § 6651(a)(1) penalties for failure to file a tax return, I.R.C. § 6656(a) penalties for the failure to make a deposit, I.R.C. § 6651(a)(3) penalties for failure to pay, negligence penalties under I.R.C. §§ 6653(a)(1) & 6662(a) and interest on penalties. The assessments are as follows:

#### FUTA

|              | 1985   | 1987   | 1988   | 1989   |
|--------------|--------|--------|--------|--------|
| FUTA         | 569.45 | 366.43 | 525.94 | 666.07 |
| FUTA/Int     | 575.19 | 244.37 | 262.56 | 223.70 |
| § 6651(a)(1) | 142.37 | 91.61  | 131.49 | 166.52 |
| § 6656(a)    | 56.85  | 36.34  | 52.59  | 66.60  |
| § 6651(a)(3) | 31.31  | 20.15  | 28.92  | 36.63  |
| § 6653(a)    | –0–    | 120.59 | 26.30  | –0–    |
| § 6662(a)    | –0–    | –0–    | –0–    | 133.22 |
| Pen/Int      | 143.93 | 95.27  | 78.83  | 101.21 |

The IRS also requests "employment taxes" which include I.R.C. § 3402 withholding taxes, backup withholding, FICA taxes and interest on these taxes as well as penalties under §§ 6651(a)(1), 6656(a), 6651(a)(3), 6662(a) (negligence), and 6653(a)(3) (negligence) and interest on the penalties.

| | Employment Taxes | | | | |
|---|---|---|---|---|---|
| | 1985 | 1986 | 1987 | 1988 | 1989 |
| § 3402 | 14,506.80 | 22,063.40 | 18,090.80 | 16,261.20 | 28,823.80 |
| Backup | –0– | –0– | 77,316.40 | 63,458.20 | 68,174.40 |
| FICA | 10,227.29 | 15,775.33 | 12,934.92 | 12,212.33 | 20,679.37 |
| Int | 24,984.60 | 36,092.05 | 66,890.71 | 42,357.90 | 36,026.29 |
| § 6651(a)(1) | 6,183.52 | 9,459.68 | 7,756.42 | 7,118.43 | 12,375.79 |
| § 6656(a) | 511.36 | 788.87 | 646.74 | 610.63 | 1,033.96 |
| § 6651(a)(3) | –0– | –0– | 11,128.98 | 5,056.28 | 1,856.36 |
| § 6662(a) | –0– | –0– | –0– | –0– | 2,475.18 |
| § 6653(a)(1) | –0– | –0– | 11,128.98 | 5,056.28 | 1,856.36 |
| Pen/Int | 6,356.35 | 9,400.25 | 7,251.73 | 4,176.12 | 6,509.22 |

These penalties apply only to the fourth quarter of 1985, the first quarter of 1986 and all quarters of 1987, 1988 and 1989. The § 6653(a)(1) penalties were assessed for only the first, second and third quarters of 1989. Finally, the § 6662(a) penalty applies to only the fourth quarter of 1989. As of the petition date, the business taxes and interest on taxes totaled $49,718.69 for 1985; $73,930.78 for 1986; $187,243.87 for 1987; $143,517.38 for 1988; and $164,265.41 for 1989.

The State of Minnesota also assessed income taxes, interest, substantial understatement penalties and negligence penalties for the years 1986 through 1989. The income taxes, interest, Minn.Stat. § 270.77 substantial understatement penalties and Minn.Stat. 290.53 negligence penalties are as follows:

| | State Income Taxes | | | |
|---|---|---|---|---|
| | 1986 | 1987 | 1988 | 1989 |
| Tax | 31,382.52 | 27,013.00 | 4,329.00 | 8,169.00 |
| Tax/Int | 21,741.11 | 16,510.62 | 1,762.03 | 3,104.92 |
| § 270.77 | 7,845.75 | 6,753.25 | 4,703.35 | –0– |
| § 290.53 | 1,569.15 | 9,454.55 | 432.90 | 3,091.95 |

The Commissioner has also asked for the following employment taxes, interest and penalties:

| | State Employment Taxes | | | | |
|---|---|---|---|---|---|
| | 1985 | 1986 | 1987 | 1988 | 1989 |
| M–1W/H | 5,077.38 | 7,722.19 | 56,237.51 | 37,420.59 | 44,175.46 |
| Int | 4,109.01 | 6,104.03 | 28,769.49 | 21,053.16 | 20,156.00 |
| § 289A.60 | 1,269.31 | 1,930.51 | 12,709.60 | 12,910.02 | 16,565.67 |

## QUESTIONS PRESENTED

1. Was the debtors' failure to timely file income tax returns for tax years 1985 through 1989 due to reasonable cause and not willful neglect?

2. Were the carpenters paid by Erickson employees or independent contractors?

3. Was the debtors' failure to timely file information returns due to reasonable cause and not willful neglect?

4. Is the debtors' failure to pay employment taxes excused by the "safe harbor" provision of Section 530 of the Revenue Act of 1978?

5. To what extent are the tax claims entitled to priority?

6. To what extent are the tax claims dischargeable?

## DISCUSSION

### I. Income Tax, Penalties and Interest

*A. Federal Income Taxes (Tax Years 1986, 1987, 1988 & 1989)*

■ The United States has made claims for the delinquent taxes, penalties, and interest that arose from the late filings of the Ericksons' federal income tax returns. Donald Klostreich prepared Erickson's income tax return (IRS Form 1040) for the year ending December 31, 1986 and filed it on July 20, 1987—over three months late. He also prepared Erickson's 1040 income tax form for 1987 and filed it on July 1, 1988—over two months late. He prepared Erickson's 1040 tax return for 1988 and filed it on February 14, 1990—almost ten months late. Finally, Klostreich prepared Erickson's 1040 for 1989 and filed it over three months late on September 17, 1990. No automatic extension forms (IRS Form 4868) were filed with the IRS for any of these returns. As a result, the debtors' income tax returns were not timely filed for the tax years 1985 through 1989.

Under I.R.C. §§ 6651(a)(1)–(2), both the failure to timely file a return and the failure to timely pay the amount shown as tax will result in an assessment of penalties unless the failures are excused. To escape the penalty, the Supreme Court has indicated that "the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the

failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985), *citing* I.R.C. § 6651(a)(1).

■ As stated in *Boyle*, "'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference" with regard to the statutory filing date. *Id.* I find that the Ericksons' failure to timely file income tax returns did not result from willful neglect. They entrusted the task of filing to Klostreich with the intention and expectation that he would follow through and file the returns.

■ As to reasonable cause, "Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." *Id.* at 249–50, 105 S.Ct. at 692. To prove reasonable cause, the taxpayer must "demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Id.* at 246, 105 S.Ct. at 690, *citing* 26 C.F.R. § 301.6651(c)(1) (1984). Despite the inflexibility of the filing requirement and Erickson's certain knowledge of the April 15th fixed date for income tax filing, the debtors have demonstrated reasonable cause and are excused from the §§ 6651(a)(1)–(2) penalties.

In *Boyle*, an able but unwilling executor abandoned his responsibility of meeting the statutory filing deadline for estate taxes and instead elected to rely on an attorney to perform the task. The attorney failed to meet the filing deadline and the estate incurred a substantial penalty for late filing. The Court found that it was unreasonable for the taxpayer to assume that the attorney would comply with the statute and upheld the penalties. *Id.* at 250, 105 S.Ct. at 692.

■ *Boyle* is distinguishable from the debtors' situation. While Erickson used his bookkeeper to ensure timely filing of his tax returns, he did not abandon his statutory duty to an agent. Instead, because of his

quadriplegia, Erickson was unable to perform the task of preparing and filing returns without the physical assistance of the tax preparer.

Erickson also exercised ordinary business care and prudence to insure that the filing would be completed. He took appropriate steps to insure that Klostreich was provided with the information necessary for completion of the income tax forms and by monitoring the agent's progress and encouraging compliance. Because of his disability, however, Erickson could neither ensure compliance nor perform the tasks himself. The bookkeeper only contacted his client by telephone and his office was not wheelchair accessible. In addition, prior experience with an IRS audit and phone conversations with Klostreich gave Erickson good reasons to believe that the filings and extensions were timely executed per his directions. I find that even though Erickson exercised appropriate care and prudence, he was unable to meet the statutory filing deadline.

■ Additional support for this conclusion is found in *Boyle*. In dicta, the *Boyle* Court showed approval for the established IRS policy of not punishing late filings caused by circumstances beyond the taxpayer's control. *Id.* at 248 n. 6, 105 S.Ct. at 692 n. 6. The Court also indicated that where the failure to timely file tax returns is the result of a disability and not reliance on an agent, "the disability alone could well be an acceptable excuse for a late filing." *Id. See also United States v. Isaac,* 68 A.F.T.R.2d 91–5094, 1991 WL 138321 (E.D.Ky.1991).

■ Erickson does not rely solely on his disability. Instead, he demonstrates that he exercised care and prudence while attempting to meet the deadline. His disability, however, necessitated reliance on someone else to perform the physical act of filing his tax returns. Erickson could assist and encourage Klostreich to file the returns, but he could not perform the filings himself. Klostreich's failure to follow through was a circumstance beyond Erickson's control.

I find that Erickson is not responsible for the failure to timely file and to timely pay income tax returns for the years 1986 through 1989. The debtors are not liable for the penalties imposed under I.R.C. §§ 6651(a)(1)–(2).

### B. State Income Taxes (Tax Years 1986, 1987, 1988 & 1989)

■ The Department of Revenue for the State of Minnesota has assessed income tax liability, interest on unpaid income tax and penalties for Minn.Stat. § 270.77 substantial understatement of liability and Minn.Stat. § 290.53 subd. 3(a) negligence. I find that the debtors are also excused from these penalties imposed by the State of Minnesota.

The substantial understatement penalty of Minn.Stat. § 270.77 may be abated "on a showing by the taxpayer that there was reasonable cause for the understatement ... and that the taxpayer acted in good faith." *Id.* For the reasons stated previously in connection with penalties imposed for failure to timely file and to timely pay federal income tax liabilities, I find that the debtors showed reasonable cause and good faith in their failure to timely pay and to timely file their Minnesota income tax returns.

■ The negligence penalty of Minn.Stat. § 290.53 subd. 3(a) is assessed where the taxpayer's failure to follow the statutory requirements is "due to negligence or an intentional disregard of the provisions of this chapter or rules of the commissioner of revenue...." *Id.* I find that Erickson did not exhibit either negligence or intentional disregard. They are therefore not liable for negligence penalties.

### II. Failure to Timely File Forms W–2 and 1099

■ The IRS has assessed the debtors for penalties under I.R.C. § 6721(a) for failure to file certain information returns and I.R.C. § 6722 for failure to furnish certain payee statements. These penalties are excused "with respect to any failure if it is shown that

such failure is due to reasonable cause and not due to willful neglect." *See* I.R.C. § 6724(a). Clearly, the debtors' information returns and payee statements do not rise to an acceptable level. Most of the forms were not filed and those that did reach the IRS were missing important tax information. Therefore, it is clear that the debtors did not comply with §§ 6721(a) and 6722. The question is whether the debtors' failure is due to reasonable cause.

With respect to information returns and payee statements, Erickson's failure is not due to reasonable cause. Reasonable cause can be established if there are either significant mitigating factors with respect to the failure or the failure arose from events beyond the filer's control. *See* 26 C.F.R. § 301.6724–1(a)(2)(i)–(ii). In addition, the filer must act in a responsible manner both before and after the failure occurred. *Id.* Erickson has not met this test.

Erickson's failure to file information returns and payee statements differs significantly from his failure to file income tax returns. Erickson has demonstrated an ability to marshall information and convey it to his tax preparer. Klostreich, nevertheless, was not provided with all of the information necessary to meet the filing requirement for the information returns and payee statements. While reasonable cause can potentially excuse the late filing, the taxpayer *must* also act in a responsible manner to both avoid and mitigate the failure. *Id.* § 301.6724–1(d)(ii) (emphasis added). Failure to follow through on this important task indicates that Erickson was not acting responsibly to avoid this failure.

In addition, Klostreich cannot file certain information returns and payee statements unless he has all of the necessary information. While Erickson's disability will excuse him from penalty where he undertook responsibility for filing but was unable to either personally perform the accompanying physical tasks or ensure their performance, the excuse does not extend to the case where Erickson has not shown a willingness to assume the responsibility for filing.

Because Erickson did not act in a reasonable manner to avoid the failure to file information returns and payee statements, Erickson is liable for the penalties under I.R.C. § 6721(a) for failure to file certain information returns and I.R.C. § 6722 for failure to furnish certain payee statements.

## III. The Employment Taxes

### A. *Employees or Independent Contractors*

■ The debtors are liable for FUTA, FICA and the withholding tax liabilities only if the carpenters working for the Erickson businesses were employees. I find that they were.

■ Determining the status of workers for employment tax purposes is not a function of mere choice. Instead, the determination rests on a factual analysis. Internal Revenue Code section 3121(d) defines "employee" for tax purposes as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." *See* I.R.C. § 3121(d)(2).

The Supreme Court has interpreted Treasury Regulations to determine whether a person works as an employee or as an independent contractor. The employer-employee relationship:

> [g]enerally . . . exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done.

*See United States v. Silk,* 331 U.S. 704, 714 n. 8, 67 S.Ct. 1463, 1469 n. 8, 91 L.Ed. 1757 (1947) (citing 26 C.F.R. § 31.3401(c)–1(b)). The Court, recognizing that the existence of an employee-employer relationship was fact dependent listed additional factors to consider, including the right to discharge and the

furnishing of tools and a place to work. For contrast, the Court indicated that if the individual is subject to the control or direction of another merely as to the outcome and not as to the means and method employed, the individual is generally an independent contractor, and not an employee. *Id.*

Other courts have proposed more specific tests to assist the finder of fact. In *Avis Rent A Car System, Inc. v. United States,* 503 F.2d 423, 429 (2d Cir.1974), the Second Circuit synthesized a seven-part test to apply to determine whether an employer-employee relationship exists. The factors include: 1) right to control; 2) substantial investment in tools or equipment; 3) undertaking a substantial cost; 4) opportunity to profit depending on management skills; 5) special skills; 6) permanency of the relationship; and 7) work in the course of the recipient's business. The IRS has also recognized a set of twenty common law factors to be used to determine the nature of a relationship. *See* Rev.Rul. 87–41, 1987–1 C.B. 296. I find that the Erickson business' carpenters were employees under any reconstitution of the *Silk* interpretation.

### 1. Right to Control

While an independent contractor is free to decide when, where and how the work is accomplished, an employee is subject to the control of the employer. Although Erickson to some extent was unable to personally direct the carpenters, he used his foremen as agents to monitor progress and to relay specific instructions to the workers. This is not a situation where Erickson contracted with carpenters and told them to build a house. The carpenters were directed when to show up, when to quit, what work to perform and how to accomplish the desired result. These employees are not made into independent contractors simply because Erickson's paralysis forced him to delegate some aspects of his control.

### 2. Method of payment

The Erickson business workers were paid an hourly wage drawn up in bi-weekly paychecks. Independent contractors, on the other hand, are usually paid in lump sums or in installments contingent on completion, or progress toward completion, of a specified task or goal. The form of remuneration employed by the Erickson business is typical of an employer-employee relationship and is not associated with independent contracting.

### 3. Profit or loss by the worker

The goal of an independent contractor is to maximize profits, and minimize loss, through the efficient management of his or her resources. To accomplish this result, an independent contractor will invest in time-saving equipment. An employee, on the other hand, has no profit incentive and is only as efficient as the employer's investment allows. As is typical of the industry, Erickson's carpenters furnished their own minor, personal equipment such as hammers and toolbelts. Erickson, however, supplied the work crews with airguns, trucks, ladders, generators, saws and many other pieces of expensive equipment. The relative contributions of the Erickson business and the carpenters clearly indicate an employer-employee relationship.

### 4. Exclusive control of services

The carpenters were expected to work exclusively for the Erickson business and could not make their services available to the general public except on their own time doing "side jobs." Erickson's control over the ability of his carpenters to work for other parties indicates that they were employees, not independent contractors.

### B. Relief Under Section 530

Section 530 of the Revenue Act of 1978 provides a "safe harbor" by preventing the IRS from reclassifying certain individuals as employees for tax purposes if the taxpayer had a reasonable basis for the treatment. Included in this provision are persons who were treated as independent contractors by a taxpayer. To be eligible for consideration

under section 530, the taxpayer (1) must have filed all required federal tax returns on a basis consistent with the taxpayer's treatment of the individual as an independent contractor and (2) must not have treated any individual in a substantially similar position as an employee. *See* Section 530 of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763. Erickson does not meet either requirement.

The essence of the safe harbor provision is to grant protection to the taxpayer who has consistently treated workers as independent contractors but has not been previously challenged by the IRS. In effect, where the taxpayer's filings have put the IRS on notice and the IRS has not acted without delay, the taxpayer must be shielded from the compounding effects of the error.

■ The keys to gaining access to the provision are found, first, in consistent treatment of all similarly situated individuals, and second, in accurate, complete filings of all required tax forms. As I determined earlier, Erickson has not consistently and accurately filed the forms necessary for treatment of his employees as independent contractors. The IRS could not have been on notice and the safe harbor provision does not extend to cover Erickson.

■ Even if Erickson had filed the appropriate forms, however, his treatment of the carpenters as independent contractors from 1985 through 1989 was inconsistent with his treatment of workers occupying the same position before 1985. In fact, many of his carpenters had been with Erickson, performing the same labor, throughout the 1980s. The safe harbor cannot shelter an employer who, for tax purposes only, inconsistently labels his workers.

### C. Reasonable Cause

■ The IRS seeks to impose penalties under I.R.C. §§ 6651(a)(1)–(3) & 6656 for Erickson's failure to pay employment taxes. Erickson asserts that not filing the necessary forms and failing to deposit withholding and FICA taxes was both due to "reasonable cause" and not the result of "willful neglect." While I find that Erickson did not willfully neglect his duty to file, deposit and pay employment taxes, these failures are not excused for reasonable cause.

The plaintiffs' argument for reasonable cause posits that Erickson relied on the advice of his tax preparer, Donald Klostreich, when Erickson decided to treat his employees as independent contractors. The *Boyle* Court has indicated that "[w]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *Boyle,* 469 U.S. at 251, 105 S.Ct. at 692. While Klostreich certainly exhibits qualities that make his claims to be an accountant highly dubious, I do not need to decide whether any advice Klostreich might proffer is worthy of reliance. Although Erickson may have mentioned his decision to treat the carpenters as independent contractors to Klostreich, he did not consult him or seek his advice when he made his decision. As a result, Erickson's failure to file forms, deposit funds in a trust account and pay the necessary employment taxes is not due to reasonable cause. I.R.C. §§ 6651(a)(1)–(2) & 6656 penalties are warranted.

■ I do not, however, find that Erickson's underpayment of FUTA and FICA taxes was due to negligence or disregard of the tax rules or regulations. Because of the advice he received from others in the business, Erickson actually believed that the carpenters were independent contractors. Although he did not have a legal or factual basis for treating his employees as independent contractors, such treatment is common in the industry and Erickson reasonably thought he was following the proper procedures. He stamped paychecks with a disclaimer of responsibility for payment of employment and income taxes, and orally conveyed similar information to the carpenters. As a result, I.R.C. § 6653(a)(1) and I.R.C. § 6662 penalties are inappropriate here.

## IV. The Parties

■ The United States of America and the State of Minnesota assessed taxes, interest on taxes, penalties and interest on penalties against both Dennis and Nanci Erickson. Because they benefitted from the income as a couple and filed jointly, they are both liable for the income tax deficiencies. However, because Nanci Erickson was not involved in the Erickson business and could not be considered an employer, she is not liable for debts arising from the employment taxes, FUTA, or penalties and interest thereon.

## V. Priorities and Dischargeability

Priorities for allowed unsecured claims of the United States and the State of Minnesota are governed by 11 U.S.C. § 507(a)(7). Compensatory and pecuniary loss penalties and prepetition interest are assigned the same priority as the underlying tax.

### A. Income Taxes

■ Section 507(a)(7)(A)(i) grants priorities to the Ericksons' income taxes for which returns were due, including extensions, after three years before this Chapter 11 bankruptcy was filed. The debtors filed on February 5, 1993. As a result, my order of June 22, 1994 granting partial summary judgment to the United States accorded priority status for the Ericksons' 1989 and 1992 federal income tax liabilities and prepetition interest totaling $21,705.75. Because of the priority, the income tax liabilities and interest thereon are nondischargeable under § 523(a)(7)(B).

■ The federal income tax returns for the years 1986, 1987 and 1988 are not priorities and, therefore, the income taxes and interest, totaling $569,229.87, are dischargeable. As indicated in this order, Erickson is not liable for penalties or interest on penalties for the income tax failures.

■ Section 507(a)(7)(A)(i) controls priorities for the Minnesota state income tax liabilities assessed by the Department of Revenue. As with the federal liabilities, a priority is granted for any state income tax liability for which a return is due, including extensions, after February 5, 1990. As a result, a priority is assigned to Erickson's $11,273.92 liability for 1989 Minnesota state income tax and interest. In addition, this liability is nondischargeable. No priorities, however, are granted for the Ericksons' $102,738.28 liability for state income taxes for 1986, 1987 and 1988 plus interest and these debts are dischargeable. There is no liability for penalties or interest on penalties for these failures.

### B. FUTA Taxes

■ The liability for FUTA taxes and interest of $2,543.94 for the years 1985 through 1988 are not priority items under I.R.C. § 507. The $889.77 of FUTA taxes and interest for 1989, however, are granted a priority under § 507(a)(7)(D) because IRS Form 940 returns were due within three years before the filing of the debtors' petition. The entire amount of the $3,433.71 liability for FUTA and interest on FUTA is dischargeable.

### C. Employment Taxes

■ Section 507(a)(7)(C) accords a priority to taxes required to be collected or withheld and for which the debtor is liable. As I have determined here, the carpenters are Erickson's employees and Erickson is not relieved from the debt by the safe harbor provision of § 530 of the Revenue Act of 1978. Through my previous order, I have already assigned a priority to the debtors' liability for withholding federal income tax for the Erickson business employees under 11 U.S.C. § 507(a)(7) and the employee's portion of the FICA contribution under I.R.C. § 3102 for the fourth taxable quarter of 1985, the first taxable quarter of 1986, and all taxable quarters of 1987, 1988 and 1989, plus any prepetition interest.

The nontrust fund taxes include the employer's contribution toward FICA, § 3402 withholding and backup withholding plus interest thereon. Erickson failed to file and

pay over his FICA, § 3402 withholding and backup withholding contributions for the fourth taxable quarter of 1985, the first taxable quarter of 1986, fourth taxable quarter of 1987 and all taxable quarters of 1988 and 1989, plus any prepetition interest thereon.

To the extent that I have found Erickson liable for § 3402 withholding, backup withholding, FICA and FUTA taxes, he is entitled to receive credits against such taxes, and such related penalties and interest, for payment by third parties of individual income tax and self-employment tax for the taxable years of 1985, 1986, 1987, 1988 and 1989. Credits include elimination of back-up withholding taxes, and interest thereon, relative to those subcontractors who submitted Forms 4669 reporting those taxes. I find that independent contractors have reported paying $78,014.00 in taxes. *See* Plaintiffs' Exs. 11 (Lines 9, 11 & 17), 12 (Lines 6, 11 & 15), 13 (Lines 20 & 32) and 19–21. In addition, adjustments in Erickson's federal income or employment tax assessments must be reflected in associated adjustments in the Department's taxes.

■■ Erickson is also entitled to relief under I.R.C. § 3509. Because his failure to deduct and withhold employment taxes was neither due to reasonable cause nor willful neglect, his withholding and FICA liabilities are calculated under the terms set out in I.R.C. § 3509(b).

Including all of these adjustments, the total employment tax and interest liability owed to the United States is $300,847.61 in nondischargeable, priority debt.

■■ The debtors are liable for $230,-824.82 for the employee's portion of withholding for State of Minnesota taxes and interest thereon. This amount is a priority item under § 507(a)(7) and is nondischargeable under 11 U.S.C. § 523(a)(1)(A).

*D. Penalties and Interest*

■■■ Erickson is not liable for penalties under I.R.C. §§ 6651(a)(1)–(2) (income tax only), I.R.C. §§ 6653(a)(1) & 6662(a) (negligence), Minn.Stat. §§ 270.77 & 290.53 and interest thereon. The remaining penalties, assessed under I.R.C. §§ 6651(a)(1), 6651(a)(3), 6721(a), 6722, 6656(a) and 6662(a) are not for compensatory or pecuniary loss. As a result, the penalties and pro rata prepetition interest of the United States, totaling $121,400.43, are nonpriority, dischargeable items. Likewise, the penalty assessed under Minn.Stat. § 289A.60 and prepetition interest, totaling $45,385.11, is also a nonpriority, dischargeable item.

### Conclusion

Because Erickson's failure to timely file income tax returns for the years 1985 through 1989 was due to reasonable cause and not willful neglect, the penalties and interest associated with this failure are voided. The failure of Erickson to file any returns, in addition, was not due to negligence. Also, the carpenters working for Erickson were employees and not independent contractors. Finally, Erickson's failure to timely file information returns is neither due to reasonable cause nor excused by the safe harbor provision.

THEREFORE, IT IS ORDERED:

1. The United States has an allowed priority claim under 11 U.S.C. § 507(7) against Dennis and Nanci Erickson in the amount of $21,705.75 and a general unsecured claim in the amount of $569,229.87.

2. The claim of the United States against Dennis and Nanci Erickson is nondischargeable in the amount of $21,705.75.

3. The Department of Revenue has an allowed priority claim under 11 U.S.C. § 507(7) against Dennis and Nanci Erickson in the amount of $11,273.92 and a general unsecured claim in the amount of $102,-738.28.

4. The claim of the Department of Revenue is nondischargeable in the amount of $11,273.92.

5. The United States has an allowed priority claim under 11 U.S.C. § 507(7) against

Dennis Erickson in the amount of $301,-737.38 and a general unsecured claim in the amount of $123,944.37.

6. The claim of the United States against Dennis Erickson is nondischargeable in the amount of $300,847.61:

7. The Department of Revenue has an allowed priority claim under 11 U.S.C. § 507(7) against Dennis Erickson in the amount of $230,824.82 and a general unsecured claim in the amount of $45,385.11.

8. The claim of the Department of Revenue is nondischargeable in the amount of $230,824.82.

LET THE JUDGMENT BE ENTERED ACCORDINGLY.