117 T.C. No. 22

UNITED STATES TAX COURT

EWENS AND MILLER, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13069-99.                    Filed December 11, 2001.

     P manufactured bakery products.  P had workers who
produced its product (CPWs and BWs), delivered its
product (RDs), and marketed its product (OSWs).

     In 1992, P "converted" all its employees to
independent contractors.  R issued P a Notice of
Determination Concerning Worker Classification Under
Section 7436 determining that the CPWs, BWs, RDs, and
OSWs were employees for purposes of Federal employment
tax, that P was not entitled to relief pursuant to sec.
530 of the Revenue Act of 1978, Pub. L. 95-600, 92
Stat. 2763, 2885, and that P was liable for penalties
pursuant to sec. 6656, I.R.C.

     On Sept. 28, 1999, R filed a motion to dismiss for
lack of jurisdiction as to the amounts of employment
taxes and related penalties.  On Oct. 26, 1999,
following this Court's decision in Henry Randolph
Consulting v. Commissioner, 112 T.C. 1 (1999), we
granted R's motion.

Subsequent to the trial in this case, Congress amended sec. 7436(a), I.R.C., to provide this Court with jurisdiction to decide the correct amounts of employment taxes that relate to the Secretary's determination concerning worker classification. Community Renewal Tax Relief Act of 2000 (CRTRA), Pub. L. 106-554, sec. 314(f), 114 Stat. 2763. The amendment to sec. 7436, I.R.C., was made retroactive to the effective date of sec. 7436(a), I.R.C. CRTRA sec. 314(g).

Held: pursuant to sec. 7436(a), I.R.C., this Court has jurisdiction over additions to tax and penalties found in subtitle F, chapter 68, including deciding the proper amounts of such additions to tax and penalties, related to taxes imposed by subtitle C with respect to worker classification or sec. 530 treatment determinations.

Held, further, The CPWs, BWs, and OSWs are employees of P pursuant to sec. 3121(d)(2), I.R.C., because they were common law employees.

Held, further, the RDs are employees of P pursuant to sec. 3121(d)(3)(A), I.R.C., because they were statutory employees.

Held, further, P is not entitled to relief pursuant to sec. 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885.

Roger Miller (an officer), for petitioner.

Denise G. Dengler, for respondent.

VASQUEZ, Judge: This case is before the Court on a petition for redetermination of a Notice of Determination Concerning Worker Classification Under Section 7436 (Notice of Determination). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the

year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether the workers[1] performing services for petitioner were employees during 1992; (2) whether petitioner is entitled to "safe harbor" relief as provided by section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885 (section 530); and (3) whether our jurisdiction to decide the proper amount of employment taxes[2] provides the Court with jurisdiction to decide the proper amount of additions to tax and penalties related to employment tax arising from worker classification or section 530 treatment determinations.

## FINDINGS OF FACT

Petitioner was a Virginia corporation that had its principal place of business in Lorton, Virginia. At the time it filed its petition, petitioner had terminated its corporate status. Prior to and during 1992, petitioner manufactured bakery products such as cookies, brownies, and cinnamon buns.

Peter Ewens (Ewens) was the president, and Roger Miller

---

[1] Respondent concedes that the "consultant/outside professional service workers" were not employees of petitioner.

[2] For convenience, we use the term "employment taxes" to refer to taxes under the Federal Insurance Contributions Act, ch. 736, secs. 3101-3128, 68A Stat. 415 (1954), the Federal Unemployment Tax Act, ch. 736, secs. 3301-3311, 68A Stat. 439 (1954), and income tax withholding, secs. 3401-3406.

(Miller) was the vice president of petitioner. Ewens ran petitioner on a day-to-day basis and controlled petitioner's operations. Miller was a financial adviser to petitioner. During its operation, Miller was at petitioner's plant approximately once a month.

Miller was a C.P.A. who had his own company that prepared tax returns.[3] Miller prepared petitioner's Federal corporate income tax returns for 1991 and 1992. He also signed petitioner's Federal employment tax returns for 1992.

Petitioner had several categories of workers including bakery personnel and production workers (bakery workers), cash payroll workers, route distributors/sales people (route distributors), and outside sales workers.

The bakery workers worked at petitioner's plant. Using equipment and supplies provided by petitioner, they mixed dough, and baked and packaged petitioner's products. Although petitioner did not set the bakery workers' hours, each day a certain amount of production had to be completed, and the bakery workers could not leave until the production quota was met. Petitioner paid the bakery workers a fixed amount based on the amount of product they produced.

Prior to 1992, petitioner treated the bakery workers as

---

[3] Miller also was a graduate of Brooklyn Law School; however, he never practiced law. Miller was also a former IRS auditor.

employees.  In 1991, petitioner issued the bakery workers Forms W-2, Wage and Tax Statement.  In 1992, 30 out of petitioner's 37 bakery workers received Forms 1099.  Of the seven who did not receive a Form 1099, only two earned less than $600.[4]

The cash payroll workers were a family of six or seven individuals known as "the Rusli group".  The Rusli group was not a corporation.  The Rusli group worked for petitioner for a number of years prior to 1992.  The Rusli group performed the same work as the bakery workers.  Since 1987, pursuant to a written agreement between the Rusli group and petitioner, the Rusli group also supervised the bakery workers.  In 1992, petitioner did not issue Forms 1099 to any of the cash payroll workers.

The route distributors transported petitioner's product from its plant to individuals or businesses who purchased the product. Some route distributors bought the product and resold it for a higher price; others worked on a commission basis.  The route distributors drove their own vehicles.  Petitioner did not set the hours the route distributors worked.

In 1991, petitioner issued at least one route distributor,

---

[4] Petitioner, however, did issue Forms 1099 to six bakery workers who earned less than $600.

Frank Barranco, a Form W-2. In 1992, petitioner did not issue Forms 1099 to any of petitioner's 21 route distributors.[5]

The outside sales workers were individuals who marketed petitioner's product. They had their own vehicles, and petitioner did not set their hours. When an outside sales worker sold a product, he was paid a commission. Petitioner had the right to hire and fire the outside sales people.

In 1991, petitioner issued at least two outside sales workers, Terre Cone and Terry McKnight, a Form W-2. In 1992, two of petitioner's five outside sales workers received Forms 1099. Of the three who did not receive a Form 1099, two earned less than $600.

On November 4, 1991, petitioner issued a memorandum from Ewens to the staff. The memorandum stated: (1) The company had treated certain workers as employees and others as independent contractors; (2) beginning January 1, 1992, petitioner would discontinue its production function and would subcontract its entire operations to outside groups or individuals; (3) individuals who wanted to continue their association with petitioner would be required to sign a statement in which they accepted responsibility for all of their own payroll taxes; (4) individuals would be issued Forms 1099 instead of Forms W-2; and

---

[5] Only 5 of the 21 route distributors earned less than $600.

(5) employees not wishing to become independent contractors would be discharged prior to January 1, 1992.

After January 1, 1992, there was no change in the activities petitioner's workers performed (i.e., in 1992, the workers did much of the same work). The reason petitioner wanted to convert its employees to independent contractors was to protect petitioner from lawsuits[6] and to have better control over the activities of its workers. Petitioner was advised by an attorney to convert the employees to independent contractors to limit petitioner's liability. Petitioner continued directly paying its workers.

Several of petitioner's checks issued to its workers, and signed by Miller, in 1992 bear the notation "payroll". Additionally, there was a debit slip dated July 3, 1992, for petitioner's bank account that noted that cash was withdrawn for payroll.

For 1991, petitioner reported salaries and wages of $196,433 on its Federal corporate income tax return, and it issued 51 Forms W-2 to its employees reporting total wages of $196,432.60. Petitioner also reported $81,143 of subcontractual labor, and it issued 10 Forms 1099-MISC reporting total payments of $37,930.74.

---

[6] In 1991, some of petitioner's workers were stealing and sabotaging its products. There were walnut shells in the cookies and nails in the brownies. Consumers of petitioner's products had retained attorneys and were suing petitioner.

For 1992, petitioner reported no salaries and wages on its Federal corporate income tax return. Petitioner reported $115,287 of subcontractual labor, and it issued 36 Forms 1099-MISC reporting total payments of $115,287.05.

Petitioner filed Forms 941, Employer's Quarterly Federal Tax Return, for the four quarters of 1992 and reported no wages subject to withholding, no withheld income tax, no Social Security tax, and no Medicare tax. Petitioner's Form 941 for the last quarter of 1992 reported that the date final wages were paid was December 31, 1991, that it had no employees, and that it was out of business. Petitioner's Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 1992 also reported no wages, that petitioner had no employees, and that it was out of business.

Respondent determined that the bakery workers, cash payroll workers, route distributors, and outside sales workers were employees for employment tax purposes for 1992. Respondent further determined that petitioner was not entitled to section 530 relief for any of these workers. Respondent also determined penalties pursuant to section 6656.

OPINION

I. Jurisdiction Over Amounts

In its petition, petitioner disputed the amounts of the employment taxes and penalties that were set forth on the

schedule accompanying the Notice of Determination. In keeping with our decision in Henry Randolph Consulting v. Commissioner, 112 T.C. 1 (1999) (holding that we did not have jurisdiction regarding employment tax liabilities), prior to trial we granted respondent's motion to dismiss for lack of jurisdiction as to the amounts of employment taxes and related penalties.

This case was tried prior to Congress's amendment of section 7436(a) that provided this Court with jurisdiction to decide the correct amounts of employment taxes which relate to the Secretary's determination concerning worker classification. Community Renewal Tax Relief Act of 2000 (CRTRA), Pub. L. 106-554, sec. 314(f), 114 Stat. 2763. The amendment to section 7436 was made retroactive to the effective date (August 5, 1997) of section 7436(a). CRTRA sec. 314(g); Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1454(a), 111 Stat. 1055.

The amendment providing us with jurisdiction regarding the amount of employment tax does not explicitly state whether we have jurisdiction to decide the proper amount of additions to tax and penalties related to employment tax arising from worker classification or section 530 treatment determinations. This is an issue of first impression.

Section 6665(a)(2) provides that, except as otherwise provided, any reference in Title 26 to a tax imposed by Title 26 shall be deemed also to refer to the additions to tax, additional

amounts, and penalties provided by chapter 68 of subtitle F.  The section 6656 penalty is found in chapter 68 of subtitle F and applies in the case of a failure to deposit by the date prescribed therefor "any amount of tax imposed by this title" (i.e., Title 26).  Section 7436(e) provides that the term "employment tax" means any tax imposed by subtitle C.  Section 7436(e) does not exclude additions to tax or penalties from the definition of employment tax.

Therefore, we hold that we do have jurisdiction over additions to tax and penalties found in chapter 68 of subtitle F (sections 6651 through 6751), including deciding the proper amount of such additions to tax and penalties, related to taxes imposed by subtitle C with respect to worker classification or section 530 treatment determinations.

II.  Employees v. Independent Contractors

Respondent's determinations are presumptively correct, and petitioner bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  This principle applies to the Commissioner's determination that a taxpayer's workers are employees.  Boles Trucking, Inc. v. United States, 77 F.3d 236, 239-240 (8th Cir. 1996).  If an employer-employee relationship[7] exists, its

---

[7]  Secs. 31.3121(d)-1(c)(2), 31.3306(i)-1(b), Employment Tax Regs., define an employer-employee relationship as follows:
(continued...)

characterization by the parties as some other relationship is of no consequence.  Sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

For the purposes of employment taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".  Sec. 3121(d)(2); accord sec. 3306(i).  Although the determination of employee status is to be made by common law concepts, a realistic interpretation of the term "employee" should be adopted, and doubtful questions should

---

[7](...continued)

   Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished.  That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done.  In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.  The right to discharge is also an important factor indicating that the person possessing that right is an employer.  Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.  In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.  * * *

See also sec. 31.3401(c)-1(b), Employment Tax Regs. (using virtually identical language).

be resolved in favor of employment.  <u>Breaux & Daigle, Inc. v.</u>
<u>United States</u>, 900 F.2d 49, 52 (5th Cir. 1990).

Section 3121(d) also defines an "employee" for employment
tax purposes as (1) an individual who performs services for
remuneration as a agent-driver or commission-driver engaged in
distributing meat products, vegetable products, bakery products,
beverages (other than milk), or laundry or dry cleaning services
and (2) a traveling or city salesman, other than an agent-driver
or commission-driver, engaged on a full-time basis in the
solicitation on behalf of, and the transmission to, his principal
of orders from wholesalers, retailers, restaurants, or other
similar establishments for merchandise for resale.  Sec.
3121(d)(3)(A) and (D).  A worker can be a "statutory employee"
under section 3121(d)(3) only if he is not a common law employee
under section 3121(d)(2).  We therefore first must decide whether
petitioner's workers were common law employees, and if they were
not then we shall decide whether they were statutory employees.
<u>Lickliss v. Commissioner</u>, T.C. Memo. 1994-103.

A.   <u>Whether Petitioner's Workers Were Common Law Employees</u>

This Court considers the following factors to decide whether
a worker is a common law employee or an independent contractor:
(1) The degree of control exercised by the principal; (2) which
party invests in work facilities used by the individual; (3) the

.opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995). All the facts and circumstances of each case are considered, and no single factor is dispositive. Id.

### 1. Degree of Control

The degree of control necessary to find employee status varies with the nature of the services provided by the worker. Id. at 388. To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual; it is sufficient if he has the right to do so. Id.; see sec. 31.3401(c)-1(b), Employment Tax Regs.

Similarly, the employer need not set the employee's hours or supervise every detail of the work environment to control the employee. Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987). The fact that workers set their own hours does not necessarily make them independent contractors. Id.

#### a. Bakery Workers and Cash Payroll Workers

Petitioner controlled where the bakery workers and cash payroll workers worked, what products they used to complete their work, and how much product they had to produce. Petitioner also

determined the amount they were paid. On this record, petitioner's control of the bakery workers and cash payroll workers is consistent with an employer-employee relationship.

### b. Route Distributors

The record does not establish that petitioner controlled to whom the route distributors sold petitioner's product or where the product was sold. It is unclear whether petitioner or the route distributor decided how the route distributor was to be compensated (whether on a commission basis or through purchase and resale of the product at a higher price). Petitioner did not set the route distributors' hours. On the record, this factor is not indicative of an employer-employee relationship.

### c. Outside Sales Workers

The record does not establish that petitioner controlled to whom the outside sales workers marketed petitioner's product or where they marketed the product. Outside sales workers could hire substitutes and assistants to perform this work. Petitioner did not set the outside sales workers' hours. On the record, this factor is not indicative of an employer-employee relationship.

### 2. Investment in Facilities

The fact that a worker provides his or her own tools generally indicates independent contractor status. Breaux & Daigle, Inc. v. United States, supra at 53.

### a. Bakery Workers and Cash Payroll Workers

Petitioner supplied the facility, equipment, and goods the bakery workers and cash payroll workers used to perform their jobs. The bakery workers and cash payroll workers did not have an investment in the goods or facilities. This is indicative of an employer-employee relationship.

### b. Route Distributors

Although some route distributors purchased petitioner's product for resale, rather than working on commission, they returned the product they did not sell to petitioner. The route distributors, however, owned their own vehicles. On this record, we conclude that the route distributors did have an investment in facilities.

### c. Outside Sales Workers

The outside sales workers owned their own vehicles, and any use of petitioner's facilities was de minimis. On this record, we conclude that this factor does not weigh against treating the outside sales workers as independent contractors.

### 3. Opportunity for Profit or Loss

The bakery workers and cash payroll workers were paid based on the amount of product produced (which petitioner determined), and the outside sales workers received a commission when they sold petitioner's product. Some route distributors were paid a commission for product they sold. Others purchased petitioner's

product and resold it; however, they were able to return any product they did not sell.

### 4. Right To Discharge

#### a. Bakery Workers and Cash Payroll Workers

Pursuant to the written agreement between petitioner and the cash payroll workers, the cash payroll workers had the right to hire and supervise the bakery workers. The agreement, however, is silent with respect to whether petitioner retained the right to fire the bakery workers. Additionally, the record is silent regarding petitioner's right to discharge the cash payroll workers.

#### b. Route Distributors

The record is silent with respect to this factor.

#### c. Outside Sales Workers

Petitioner had the right to hire and fire the outside sales workers. This is indicative of an employer-employee relationship.

### 5. Integral Part of Business

Petitioner's business was manufacturing baked goods. Petitioner hired the bakery workers and cash payroll workers to produce the baked goods, the route distributors to deliver the baked goods, and the outside sales workers to market the baked goods. The work performed by each category of workers was within the scope of petitioner's regular business.

6. <u>Permanency of the Relationship</u>

A transitory work relationship may point toward independent contractor status. <u>Herman v. Express Sixty-Minutes Delivery Serv., Inc.</u>, 161 F.3d 299, 305 (5th Cir. 1998). If, however, the workers work in the course of the employer's trade or business, the fact that they do not work regularly is not necessarily significant. <u>Avis Rent A Car Sys. v. United States</u>, 503 F.2d 423, 430 (2d Cir. 1974) (transients may be employees); <u>Kelly v. Commissioner</u>, T.C. Memo. 1999-140 (working for a number of employers during a tax year does not necessitate treatment as an independent contractor). In considering the permanency of the relationship, we must also consider petitioner's right to discharge the worker, and the worker's right to quit, at any time.

a. <u>Cash Payroll Workers</u>

The cash payroll workers began working for petitioner in 1986. The relationship between petitioner and the cash payroll workers was permanent as opposed to transitory.

b. <u>Bakery Workers</u>

At least 11 of the bakery workers worked for petitioner in 1991 and 1992. The record is silent regarding whether any of the other 37 bakery workers working for petitioner in 1992 worked for petitioner prior to 1992. On the basis of this record, we

conclude that a significant number of the bakery workers had a permanent, rather than transitory, relationship with petitioner.

### c. Route Distributors

At least two of the route distributors worked for petitioner in 1991 and 1992. The record is silent regarding whether any of the other 21 route distributors working for petitioner in 1992 worked for petitioner prior to 1992.

### d. Outside Sales Workers

At least two of the five outside sales workers worked for petitioner in 1991 and 1992. According to Miller, petitioner had a continuing relationship with the outside sales workers. On this record, we conclude that the outside sales workers had a permanent, rather than transitory, relationship with petitioner.

## 7. Relationship the Parties Thought They Created

### a. Bakery Workers and Cash Payroll Workers

According to the November 1991 memorandum issued by petitioner, starting in 1992 it would consider all workers producing its product (which included the bakery workers and cash payroll workers) independent contractors. None of the bakery workers or cash payroll workers, however, testified regarding what kind of relationship they thought they had with petitioner.

### b. Route Distributors

Miller testified that petitioner did not consider the route distributors to be employees or independent contractors. None of

the route distributors, however, testified regarding what kind of relationship they thought they had with petitioner.

### c.    Outside Sales

Miller filled out a questionnaire given to petitioner's workers, who were also his clients, by the IRS.  For the two outside sales workers who responded, Miller answered that they thought they were independent contractors.  None of the outside sales workers, however, testified at trial.

### 8.    Additional Factor

Petitioner argues that the route distributors carried products of, the outside sales workers marketed products for, and the cash payroll workers had contracts with, companies other than petitioner.  In Kelly v. Commissioner, supra, we held that working for a number of employers during a tax year does not necessitate treatment as an independent contractor.

### 9.    Conclusion

After considering the record as a whole, weighing all of the factors, and being cognizant that doubtful questions should be resolved in favor of employment, we conclude that the cash payroll workers, bakery workers, and outside sales workers were common law employees.  Upon the basis of this record, however, we do not find the route distributors to be common law employees.[8]

---

[8]  Petitioner did not control the route distributors to the same degree as it controlled the bakery workers and cash payroll
(continued...)

Therefore, we must decide whether the route distributors were statutory employees.  See sec. 3121(d)(3); Lickliss v. Commissioner, T.C. Memo. 1994-103.

B.    Whether the Route Distributors Were Statutory Employees

For the purposes of employment taxes, the term "employee" also includes individuals who perform services for remuneration as an agent-driver or commission-driver engaged in distributing bakery products.  Sec. 3121(d)(3)(A).  Substantially all of these services must be performed personally by such individual.  Sec. 3121(d)(3) (flush language).  Individuals are not included in the term "employee" under section 3121(d)(3) if the individual has a substantial investment in the facilities used in connection with the performance of such services (other than facilities for transportation), or if the services are in the nature of a single transaction.  Id.

The regulations provide that agent-drivers and commission-drivers include individuals who operate their own truck, serve customers designated by the person for whom they perform services and customers solicited on their own, and whose compensation is a

---

8(...continued)
workers.  Unlike the bakery workers and cash payroll workers, the route distributors had an investment in facilities.  Unlike the outside sales workers, the record did not establish that petitioner had the right to hire and fire the route distributors. Unlike the bakery workers, cash payroll workers, and outside sales workers, the record did not establish that petitioner had a permanent relationship with the route distributors.

commission on their sales or the difference between the price they charge the customers and the price they pay for the product or service. Sec. 31.3121(d)-1(d)(3)(i), Employment Tax Regs.

The route distributors fit within the definition of agent-driver and commission-driver provided in the Code and regulations. They each performed substantially all the distribution of bakery products for petitioner. The route distributors did not have a substantial investment in the facilities other than those used for transportation. The record does not establish that their services were in the nature of a single transaction. The route distributors served customers designated by petitioner as well as those they solicited on their own, and their compensation was either a commission on their sales or the difference between the price they charged and the price they paid for petitioner's bakery products. Therefore, we conclude that the route distributors were statutory employees.

III. Section 530

Congress enacted section 530 to alleviate what it perceived as the "overly zealous pursuit and assessment of taxes and penalties against employers who had, in good faith, misclassified their employees as independent contractors." Boles Trucking, Inc. v. United States, 77 F.3d at 239. Thus, despite our conclusion that the cash payroll workers, bakery workers, route distributors, and outside sales workers were employees of

petitioner, and that the payments to them from petitioner were wages subject to Federal employment taxes, section 530 allows petitioner relief from employment tax liability if two conditions are satisfied.  Section 530(a)(1) provides in relevant part:

  (1) In general.--If

       (A) for purposes of employment taxes,
    the taxpayer did not treat an individual as
    an employee for any period * * *, and

       (B) in the case of periods after
    December 31, 1978, all Federal tax returns
    (including information returns) required to
    be filed by the taxpayer with respect to such
    individual for such period are filed on a
    basis consistent with the taxpayer's
    treatment of such individual as not being an
    employee,

  then, for purposes of applying such taxes for such
  period with respect to the taxpayer, the individual
  shall be deemed not to be an employee unless the
  taxpayer had no reasonable basis for not treating such
  individual as an employee.

Section 530(a)(3) further clarifies section 530(a)(1) by providing that if the "taxpayer (or a predecessor)" treated any individual holding a "substantially similar position as an employee", then section 530 relief is not available to the taxpayer.  Sec. 530(a)(1), (3).  We note that the statute does not require the individuals to be identical; rather, the analysis focuses on whether individuals were in substantially similar positions.

For purposes of section 530(a)(1), a taxpayer is treated as having a reasonable basis for not treating an individual as an

employee if the taxpayer's treatment of the individual was in reasonable reliance on (1) judicial precedent, (2) published rulings, (3) technical advice with respect to the taxpayer, (4) a letter ruling to the taxpayer, (5) a past IRS audit of the taxpayer if the audit entailed no assessment attributable to the taxpayer's employment tax treatment of individuals holding positions substantially similar to the position held by the individual whose status is at issue, or (6) a longstanding recognized practice of a significant segment of the industry in which the individual was engaged. Sec. 530(a)(2); Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. ___, ___ (2001) (slip op. at 10-11). A taxpayer who fails to meet any of the safe havens is still entitled to relief if the taxpayer can demonstrate, in some other manner, a reasonable basis for not treating the individual as an employee. Veterinary Surgical Consultants, P.C. v. Commissioner, supra at ___ (slip op. at 11).

A. Application of Section 530(a)(1)

Prior to 1992, petitioner treated all of its production workers (cash payroll workers and bakery workers) as employees. Prior to 1992, petitioner treated at least one route distributor and at least two outside sales workers as employees. Miller testified that many of petitioner's workers were employees in 1991.

In 1992, petitioner did not file Forms 1099 for (1) seven

bakery workers, (2) any of the cash payroll workers,[9] (3) any of the route distributors, and (4) three outside sales workers.[10]

Petitioner did not demonstrate that it reasonably relied upon judicial precedent, published rulings, technical advice, a letter ruling, or a past audit. Petitioner argues that it relied on a longstanding practice in the industry in which it was engaged--"co-packing".

"Co-packing" is where a company does not produce its product itself; it hires others to produce its goods for it. Petitioner presented no evidence, however, on how the practice of co-packing related to the treatment of its workers as employees. Furthermore, petitioner did not offer any witnesses to testify about an industry practice of co-packing and the treatment of "co-packers" as independent contractors. See, e.g., Gen. Inv. Corp. v. United States, 823 F.2d at 341.

Additionally, petitioner did not demonstrate, in some other manner, a reasonable basis for not treating the bakery workers, cash payroll workers, route distributors, and outside sales workers as employees. We conclude that petitioner had no reasonable basis for treating the bakery workers, cash payroll

---

[9] Miller agreed with the revenue officer who testified at trial that the cash payroll workers were not a corporation.

[10] We note that only 7 of these 38 workers earned less than $600. See sec. 6041 (information returns required for payments of $600 or more); sec. 1.6041-1, Income Tax Regs.

workers, route distributors,[11] and outside sales workers as independent contractors.[12]

B.  Conclusion

In Erickson v. Commissioner, 172 Bankr. 900, 913 (Bankr. D. Minn. 1994), the court noted:

> The essence of the safe harbor provision is to grant protection to the taxpayer who has consistently treated workers as independent contractors but has not been previously challenged by the IRS.  In effect, where the taxpayer's filings have put the IRS on notice and the IRS has not acted without delay, the taxpayer must be shielded from the compounding effects of the error.

In the case before us, petitioner is not in a position to receive the protections provided by Congress because petitioner did not satisfy the requirements of section 530(a)(1).  We conclude that petitioner is not entitled to section 530 relief for any of its bakery workers, cash payroll workers, route distributors, or outside sales workers.

To reflect the foregoing,

An appropriate order

will be issued.

---

[11]  We note that Miller testified that he was aware of regulations that provided that the route distributors should be categorized as employees.

[12]  We note that Miller testified that he knew that the conversion of the workers from employees to independent contractors was not done correctly and that "it would screw up the issue for payroll taxes".