T.C. Memo. 2012-184

UNITED STATES TAX COURT

TWIN RIVERS FARM, INC., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14074-10.                      Filed July 2, 2012.

<u>Richard Militana</u>, for petitioner.

<u>Linda E. Mosakowski</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  The petition in this case was filed in response to respondent's

notice of determination of worker classification (notice) dated March 24, 2010.

Petitioner seeks a redetermination of employment status pursuant to section

7436.[1]  Respondent determined in the notice that petitioner, Twin Rivers Farm, Inc. (Twin Rivers), owed employment taxes of $6,951.75, $9,430.20, and $9,430.20 for the taxable years 2006, 2007, and 2008, respectively (years at issue).  Respondent also determined additions to tax under section 6651(a)(1) of $1,564.14, $2,121.80, and $2,121.80 and penalties under section 6656 of  $131.96, $179.01, and $179.01 for the taxable years 2006, 2007, and 2008, respectively.

After concessions,[2] the issues for decision are:  (1) whether petitioner's two farm workers were employees for purposes of Federal employment taxes during the years at issue, and (2) whether petitioner is liable for additions to tax and penalties under sections 6651(a) (1) and 6656, respectively, for the years at issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes that petitioner is not liable for the addition to tax under sec. 6651(a)(2) for the years at issue.  In addition, in its pretrial memorandum petitioner indicated that it would seek relief from Federal employment taxes under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885.  Petitioner did not address that issue on brief and indicated at trial that it did not intend to pursue that avenue for relief.

the petition was filed, petitioner was an S corporation with its principal place of business in Franklin, Tennessee.

Petitioner was formed on October 11, 2005. From January 1, 2006, to December 31, 2008 (years at issue), petitioner's primary activity was the raising, inventorying, training, marketing, and showing of horses for anticipated sales, and/or anticipated prospective use for lessons and/or leasing of horses. Petitioner's sole owner and sole corporate officer was Diana Militana. Diana Militana has been involved in the equestrian business at other locations and with other entities. Diana Militana is married to Richard Militana.

During the years at issue at least six horses were, for at least some time, kept on property which petitioner had the right to occupy. The property on which petitioner operates consists of approximately 114 acres and includes woods, a meadow, a barn with a tack room, a metal corral, a house (in which the Militanas lived), a trailer, cross fencing, and a fence surrounding the property. The house on the property includes a stable office (which the Militanas used to work on equestrian-related business) and is surrounded by grounds on which horses can be displayed and observed from either the office or the front porch.

During 2006 and continuing through 2007 and 2008 petitioner engaged two farm workers, Adam Lopez Morales and Nallhelyo Ruiz (workers), to work on the

property. The workers lived in the trailer on the property and do not appear to ever have paid rent. For the years at issue petitioner purchased workers' compensation and employer's liability insurance from American National Property and Casualty.

During the years at issue the workers' job duties included: cleaning stalls, the barn area, the barn offices, the rest room, and the tack room; grooming horses; watering the horses; and moving the horses between pastures. The harnesses, brushes and combs, shovels, pitchforks, wheelbarrow, manure spreader, and brooms used to care for the horses and barn were all owned by petitioner.

During the years at issue Mr. Morales was also primarily responsible for cutting grass in the pastures and otherwise performing grounds-keeping-related activities. Mr. Morales used weed whackers, a Bush Hog mower, a tractor, and other equipment provided to him by petitioner to cut the grass in the pasture.

On occasion the workers also repaired fences on the property. The materials to maintain the fences were provided by either petitioner directly, or Mr. Morales would pick them up at the store, sign for the materials, and have the bill sent to petitioner.

Petitioner paid to each worker weekly compensation by check signed by Diana Militana in her capacity as president. Mr. Morales was paid $300 per week,

and Mr. Ruiz was paid $150 per week. The workers were sometimes given advances on their weekly compensation. When a worker received an advance on his weekly compensation, his next several compensation checks were reduced to repay petitioner for the advanced amount.

With respect to the years at issue petitioner did not file with respondent any Forms 943, Employer's Annual Federal Tax Return for Agricultural Employees, or Forms 941, Employer's Quarterly Federal Tax Return. For the years at issue petitioner did not make deposits of employment tax with respondent and has not paid any of the employment tax liability that was determined in the notice. For the years at issue petitioner did not file Forms 1099 with respect to the workers.

OPINION

## I. Employee Classification

Respondent's determinations are presumptively correct, and petitioner bears the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This principle applies to the Commissioner's determinations that a taxpayer's workers are employees. Boles Trucking, Inc. v. United States, 77 F.3d 236, 239-240 (8th Cir. 1996); Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 268 (2001).

For purposes of employment taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". Sec. 3121(d)(2); see also sec. 3306(i); Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 269. Whether an individual is an employee must be determined on the basis of the specific facts and circumstances involved. Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). Relevant factors include: (1) the degree of control exercised by the principal; (2) which party invests in the work facilities used by the worker; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. See Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 429 (2d Cir. 1974); Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 270; Weber v. Commissioner, 103 T.C. 378, 387 (1994), aff'd per curiam, 60 F.3d 1104 (4th Cir. 1995). We consider all of the facts and circumstances of each case, and no single factor is determinative. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 270; Weber v. Commissioner, 103 T.C. at 387. Although the determination of employee status is to be made by common law

concepts, a realistic interpretation of the term "employee" should be adopted, and doubtful questions should be resolved in favor of employment in order to accomplish the remedial purposes of the legislation involved. Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 52 (5th Cir. 1990); see Schramm v. Commissioner, T.C. Memo. 2011-212; Donald G. Cave A Prof'l Law Corp. v. Commissioner, T.C. Memo. 2011-48, aff'd, ___ Fed. Appx. ___ (5th Cir. Mar. 22, 2012).

1.  Degree of Control

The degree of control that the principal exercises over the worker has been referred to as the crucial test in making the determination. See Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Rosato v. Commissioner, T.C. Memo. 2010-39. The degree of control necessary to find employment status varies with the nature of the services provided by the worker. Weber v. Commissioner, 103 T.C. at 388; Potter v. Commissioner, T.C. Memo. 1994-356. To retain the requisite degree of control, the principal need not actually direct or control the manner in which the services are performed; it is sufficient if the principal has the right to do so. Weber v. Commissioner, 103 T.C. at 388; Potter v. Commissioner, T.C. Memo. 1994-356; sec. 31.3401(c)-l(b), Employment Tax Regs. A business can retain the requisite control over the details of a worker's

service without having to stand over the worker and direct every move made by that worker.  Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 234.

Diana Militana maintains that she did not exercise control over the workers. However, the nature of the employment arrangement indicates that it is likely that she had the right to exercise control, even if that right was not often exercised.  The workers were allowed to use petitioner's farm equipment (including a tractor) and supplies to maintain the appearance of the property.  It is difficult to imagine that the workers' use of petitioner's valuable equipment could not have been controlled by petitioner in the event of misuse by the workers.  Throughout the years at issue Diana Militana was at the farm "most of the time" and, therefore, had the opportunity to supervise the work being done on the farm.  It is unlikely that if the workers were careless in their use of the equipment petitioner would not have exercised control over their activities.  In addition, the workers were responsible for performing services that could affect petitioner's primary assets, its horses.  That petitioner would turn the responsibility of caring for the horses over to the workers without retaining the right to control their work is implausible.  As a result, we find that this factor is supportive of the existence of an employer-employee relationship between petitioner and the workers for the years at issue.

2.  Investment in Facilities

The fact that a worker provides his or her own tools or owns a vehicle that is used for work is indicative of independent contractor status.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 271.  Petitioner owned all of the equipment that the workers used to perform their services including, but not limited to:  the equipment and supplies used to care for the horses and the pastures and to clean the stalls and other rooms in the barn; the tractor used to maintain the grounds; and the trailer where the workers lived.  As a result, the workers had no financial investment in the rendering of services to petitioner.  Because petitioner made all of the investments in the equipment supplied to the workers and provided them with everything needed to perform their services, this factor is supportive of the existence of an employer-employee relationship.

3.  Opportunity for Profit or Loss

The opportunity for profit or loss indicates nonemployee status.  Simpson v. Commissioner, 64 T.C. 974, 988 (1975); Rosato v. Commissioner, T.C. Memo. 2010-39.  During the years at issue, Mr. Morales was paid $300 per week and Mr. Ruiz was paid $150 per week, regardless of the hours worked or their productivity. Because petitioner provided the workers with all of the necessary equipment and supplies for the job, the workers had no opportunity to make a profit with respect to

the materials used on the job. Given the salarylike nature of the workers' pay and their lack of entrepreneurial risk or opportunity, this factor also indicates there was an employer-employee relationship.

4. Right To Discharge

There is no evidence in the record of the existence of any formal or informal agreement or contract that would preclude petitioner's discharging the workers. Employers typically have the right to terminate employees at will. Ellison v. Commissioner, 55 T.C. 142, 155 (1970); Colvin v. Commissioner, T.C. Memo. 2007-157, aff'd, 285 Fed. Appx. 157 (5th Cir. 2008). Without evidence of any limitation of that right, we conclude that this factor supports a finding of an employer-employee relationship.

5. Work Is Part of Principal's Regular Business

Work that is part of the principal's regular business is indicative of employee status. Simpson v. Commissioner, 64 T.C. at 989; Rosato v. Commissioner, T.C. Memo. 2010-39. During the years at issue petitioner's primary activity was the raising, inventorying, training, marketing, and showing of horses for anticipated sales, and/or anticipated prospective use for lessons and/or leasing of horses. The work performed by the workers was at least an ancillary part of petitioner's business during the years at issue. The record indicates that the workers were not

responsible for the marketing and sale of horses, nor were they responsible for the training of horses. However, their services kept the farm presentable to potential buyers, kept the grounds safe for the horses, and aided in the care of petitioner's primary assets. Given that the workers provided services which were supportive of petitioner's business, we find that this factor is also indicative of an employer-employee relationship.

6. <u>Permanency of Relationship</u>

Permanency of a working relationship is indicative of an employer-employee relationship. <u>Rosemann v. Commissioner</u>, T.C. Memo. 2009-185. In contrast, a transitory work relationship may weigh in favor of independent contractor status. <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 273.

Here, the workers were employed by petitioner throughout the years at issue. Furthermore, the workers actually maintained their primary residence on petitioner's property in a trailer provided to them by petitioner. Although there is no evidence of a contractual arrangement between petitioner and the workers creating an explicit permanent employment relationship, the relationship in practice was certainly ongoing. Because the workers were long-term employees who actually resided on the farm, it cannot be said that the relationship was transitory or temporary.

Therefore, we find that this factor is also supportive of an employer-employee relationship.

### 7.  Relationship the Parties Thought They Created

Petitioner contends that the relationship created by the parties was intended to be that of a business and independent contractors.  However, the relationship between petitioner and the workers does not support such a characterization.  The record indicates that petitioner purchased workers' compensation and employer's liability insurance for the years at issue.  In addition, petitioner covered all of the job-related expenses necessary for the workers to perform their duties.  Petitioner even provided a residence on the property for the workers and allowed the workers to receive advances on their compensation.  These actions are far more indicative of an intention to create an employment relationship than they are of an intention to create an independent-contractor relationship.  Therefore, this factor also supports the existence of an employer-employee relationship.

On the basis of a careful consideration of the foregoing factors, in the light of the facts and circumstances particular to this case, we hold that the workers were petitioner's employees for purposes of Federal employment taxes during the years at issue.

II.  Additions to Tax Under Section 6651(a)(1)

Respondent determined that for each year at issue petitioner is liable for an addition to tax under section 6651(a) (1) for failure to timely file required tax returns.  Section 6651(a) (1) provides for an addition to tax for failure to timely file a return.  The addition to tax is equal to 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25%.  A taxpayer is not liable for an addition under section 6651(a)(1) if the failure to timely file was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245-246 (1985).  To show reasonable cause, the taxpayer must show that it could not file the return on time even though it exercised ordinary business care and prudence.  See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a "conscious, intentional failure or reckless indifference."  Boyle, 469 U.S. at 245.

Employers of agricultural workers must report employment taxes on Form 943.  Sec. 31.6011(a)-1(a) (2)(ii), Employment Tax Regs.  Petitioner has not filed Forms 943 for any of the years at issue.  Petitioner has submitted no credible evidence that it exercised ordinary business care and prudence in its failure to file

Forms 943 or that it could not file the returns when due.[3]  Accordingly, we find that petitioner is liable for the addition to tax under section 6651(a)(1) for each of the years at issue.

III.  Penalties Under Section 6656

Respondent determined that for each year at issue petitioner is liable for a penalty under section 6656 for failure to make deposits of employment taxes.  If a taxpayer is more than 15 days late in depositing employment tax, section 6656 imposes a 10% penalty.  Sec. 6656; see also Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 268.  The taxpayer is not liable for the section 6656 penalty if the late deposit was due to reasonable cause and not due to willful neglect.  Sec. 6656(a).

---

[3]Petitioner contends that Diana Militana was involved in two previous tax audits involving herself and businesses similar to petitioner's operation and that those businesses had workers performing the same services, under the same conditions and payment schedules, as the workers hired by petitioner during the years in issue.  Petitioner contends that in both of the previous instances, the workers were designated by Internal Revenue Service auditors as independent contractors and not employees.  Petitioner's support for this contention is limited to Mrs. Militana's testimony.  The record before us is insufficient to indicate with any specificity the details of any previous audit determinations, the conclusions reached by the auditors, or that the businesses involved were substantially similar to petitioner's.  We also note that petitioner's failure to file Forms 1099 is inconsistent with its contentions regarding the prior audits.

Petitioner failed to make employment tax deposits. Petitioner submitted no credible evidence that it exercised ordinary business care and prudence in its failure to deposit employment taxes or that it could not make the deposits when due. Accordingly, for each of the years at issue, we find that petitioner is liable for the section 6656 penalty.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing, including respondent's concession,

Decision will be entered for respondent as to the deficiencies, additions to tax under section 6651(a)(1), and penalties under section 6656 and for petitioner as to the section 6651(a)(2) additions to tax.