**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-35

UNITED STATES TAX COURT

ATIG RAHMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29178-12S.                    Filed April 15, 2014.

Atig Rahman, pro se.

<u>Randall B. Childs</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2010 Federal income tax of $7,038 and an accuracy-related penalty of $1,115 under section 6662(a).

After concessions by petitioner,[2] the issues for decision are as follows:

(1) Whether, for purposes of self-employment tax, petitioner was an employee or an independent contractor of Ever Care Adult Care Services (Ever Care). We hold that he was an employee; and

(2) whether petitioner is liable for an accuracy-related penalty under section 6662(a) attributable to a substantial understatement of income tax resulting from petitioner's unreported income from unemployment compensation and Ever Care. To the extent that there is a substantial understatement of income tax, we hold that he is.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner concedes that for 2010 he received unemployment compensation from the Florida Agency for Workforce Innovation of $14,166 and compensation from Ever Care of $9,075. Adjustments made in the notice of deficiency that are purely mechanical are not in issue and will be resolved on the basis of petitioner's concessions and the Court's disposition of the disputed substantive issue.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in the State of Florida at the time that the petition was filed.

Petitioner was unemployed for the first part of 2010. As a result, he received unemployment compensation of $14,166 from the Florida Agency for Workforce Innovation. In or around March 2010 petitioner began working for Ever Care. Ever Care paid petitioner $9,075 for his services in 2010.

Ever Care is a business that provides a home and other care services to adults with disabilities. During 2010 Ever Care owned three homes and acquired a fourth. Ever Care hires both floor staff and group home managers.

Ever Care originally hired petitioner to be a member of floor staff, but he was promoted to group home manager after working approximately two weeks. The group home he managed was staffed with approximately six other full-time workers, and the home always had at least one staff member present. Petitioner worked approximately 40 hours per week and was paid an hourly rate every two weeks. When petitioner was not working, he was on call as the first point of contact should a problem arise at the home. Petitioner did not have any ownership

interest in Ever Care or in any of the properties associated with Ever Care. There is nothing in the record to indicate that either party intended petitioner's employment to be temporary or short term.

When Ever Care hired petitioner, Ever Care specifically enumerated his duties and responsibilities, many of which were required by the State of Florida to maintain an adult care facility. A copy of such duties and responsibilities was posted in each of Ever Care's group homes. Ever Care specified not only petitioner's particular job duties, but also when and where to perform them.

Petitioner's duties included: preparing a monthly forecast of finances; purchasing groceries for the home; meeting with officials from the Florida licensing agency; maintaining the home and making repairs; and scheduling, hiring, and firing staff. Petitioner's duties also included assisting residents with personal grooming and facilitating transportation for them.

Petitioner provided Ever Care's owner with financial projections each month and met with the owner weekly for an accounting of grocery purchases. Petitioner also reported to the owner daily regarding how the home was running. In addition, petitioner would contact the owner in the event of any emergency.

Ever Care paid for the weekly groceries for the residents as well as for upkeep and repairs to the home. Petitioner did not incur any out-of-pocket expenses related to his work at Ever Care.

In or around early 2011 Ever Care discharged petitioner.

Ever Care considered petitioner to be an independent contractor and provided him with a Form 1099-MISC, Miscellaneous Income, for 2010. Petitioner also received a Form 1099-G, Certain Government Payments, reflecting his unemployement compensation from the Florida Agency for Workforce Innovation.

Petitioner hired a certified public accountant (C.P.A.) to prepare his 2010 Federal income tax return. Petitioner did not report either unemployment compensation or compensation from Ever Care, nor did he report liability for self-employment tax on the return.

Respondent mailed petitioner a notice of deficiency for 2010, determining a deficiency of $7,038 and an accuracy-related penalty of $1,115. In the notice, respondent determined, inter alia, that petitioner was an independent contractor of Ever Care and therefore liable for self-employment tax.

Petitioner timely filed a petition for redetermination, alleging that he was an employee of Ever Care and therefore not liable for self-employment tax.

## Discussion

### I.  Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of proving that those determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(a)(1) (providing for burden shifting under prescribed conditions).  However, we need not be overly concerned with such matters because, as discussed below, the preponderance of the evidence demonstrates that petitioner was an employee of Ever Care in 2010.

### II.  Employment Status

Pursuant to section 1401, there is a tax on income earned from self-employment.  Income from self-employment consists of gross income derived by an individual from any trade or business carried on by such individual.  Sec. 1402(a).  The self-employment tax, however, does not generally apply to compensation paid to an employee.  Sec. 1402(c)(2).

"Employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an

employee. Sec. 3121(d)(2).[3] Such definition is made applicable for self-employment tax purposes by section 1402(d).

Whether an individual is an employee or independent contractor is a factual question to which common law principles apply. Sec. 3121(d)(2); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992); Hosp. Res. Pers., Inc. v. United States, 68 F.3d 421, 424 (11th Cir. 1995); Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988); sec. 31.3401(c)-1(b), (d), Employment Tax Regs. We do not analyze in depth all of the factors enumerated in the regulations and cases but rather focus on some of the more important ones that inform our decision.

Factors that are particularly relevant in determining the substance of an employment relationship include: (1) the degree of control exercised by the

---

[3] Sec. 3121(d) defines "employee", in pertinent part, as follows:

    SEC. 3121(d). Employee.--For purposes of this chapter, the term "employee" means--

        (1) any officer of a corporation; or

        (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *

principal over the details of the work; (2) the taxpayer's investment in the facilities used in his or her work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's regular business; and (7) the relationship that the parties think they are creating. NLRB v. United Ins. Co., 390 U.S. 254, 258-260 (1968); United States v. Silk, 331 U.S. 704, 716 (1947); Weber v. Commissioner, 103 T.C. at 387; Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 232; see also sec. 31.3121(d)-1(c)(2), Employment Tax Regs. (setting forth criteria for identifying employees under common law rules).

We consider all of the facts and circumstances of each case, and no single factor is determinative. Nationwide Mut. Ins. Co., 503 U.S. at 324; Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Weber v. Commissioner, 103 T.C. at 387. The factors are not necessarily weighted equally; rather, they are considered according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992). After considering these factors, as discussed below, we conclude that petitioner was an employee of Ever Care and not an independent contractor.

A.  Degree of Control

Although not the exclusive inquiry, the degree of control exercised by the principal over the worker is the most important consideration in determining the nature of a working relationship.  See Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149-150 (1995).  The degree of control necessary to find employment status varies with the nature of the services provided by the worker.  See Weber v. Commissioner, 103 T.C. at 388; Potter v. Commissioner, T.C. Memo. 1994-356.

Where the inherent nature of the job mandates an independent approach, a lesser degree of control exercised by the principal may still result in finding an employer-employee status.  See Potter v. Commissioner, T.C. Memo. 1994-356; Bilenas v. Commissioner, T.C. Memo. 1983-661.  To possess a degree of control over a worker indicative of employment, the principal need not direct the worker's every move; rather, it is sufficient if the right to do so exists.  Weber v. Commissioner, 103 T.C. at 387; see sec. 31.3401(c)-1(b), Employment Tax Regs.  Similarly, the principal need not set the worker's hours or supervise every detail of the work environment to control the worker.  Gen. Inv. Corp. v. United States, 823 F.2d 337, 342 (9th Cir. 1987).

At trial petitioner credibly testified that "[the owner had] a certain way of doing things and we had to follow that to the 'T'," and "[the owner] always had, it was always a certain, specific protocol that she always wanted us to do". Indeed, in that regard Ever Care specifically enumerated petitioner's duties and responsibilities and posted a copy thereof in each of Ever Care's homes. Ever Care also instructed petitioner regarding when and where to perform his duties. Petitioner was obligated to contact the Ever Care's owner daily to report the status of the home he managed. Petitioner was further obligated to contact Ever Care's owner to request that repairs be made and in the event of an emergency. In addition, petitioner met with the owner weekly to account for groceries, and he prepared a financial projection each month, which he provided to Ever Care's owner.

On the basis of these facts, we find that Ever Care had the right to control petitioner's work and that it did, in fact, exercise a high degree of control over it. This factor weighs heavily in favor of a finding that petitioner was a common law employee of Ever Care.

B. Investment in Facilities

The fact that a worker provides his or her own tools or goods generally indicates independent contractor status. Ewens & Miller, Inc. v. Commissioner,

117 T.C. at 271. Petitioner did not supply any tools or goods to the group home he managed. Ever Care provided petitioner money each week for him to buy groceries. In addition, Ever Care paid for any repairs made to the home. Petitioner had no out-of-pocket costs relating to his work at Ever Care. This factor indicates that petitioner was a common law employee.

C. Opportunity for Profit or Risk of Loss

An opportunity for profit or the risk of loss on the basis of the worker's own efforts and skill indicates independent contractor status. Simpson v. Commissioner, 64 T.C. 974, 988 (1975); see also Rosato v. Commissioner, T.C. Memo. 2010-39. In contrast, earning an hourly wage or a fixed salary indicates an employer-employee relationship. See Robinson v. Commissioner, T.C. Memo. 2011-99 (citing James v. Commissioner, 25 T.C. 1296, 1300 (1956)), aff'd, 487 Fed. Appx. 751 (3d Cir. 2012). In the instant case, Ever Care paid petitioner an hourly rate. Furthermore, petitioner had no other opportunity for profit or risk of loss in Ever Care. This factor indicates that petitioner was a common law employee.

D. Right To Discharge

The principal's retention of the right to discharge a worker is indicative of a common law employer-employee relationship. Rodriguez v. Commissioner, T.C.

Memo. 2012-286, at *20 (citing <u>Weber v. Commissioner</u>, 103 T.C. at 391); <u>see also</u> <u>Ellison v. Commissioner</u>, 55 T.C. 142, 152 (1970) ("'The right to discharge is also an important factor indicating that the person possessing the right is an employer.'" (quoting section 31.3401(c)-(1)(b), Employment Tax Regs.); <u>Colvin v. Commissioner</u>, T.C. Memo. 2007-157, <u>aff'd</u>, 285 Fed. Appx. 157 (5th Cir. 2008).  Ever Care retained the right to discharge petitioner and in fact discharged him in or around early 2011.  This factor indicates that petitioner was a common law employee.  <u>See</u> <u>Kumpel v. Commissioner</u>, T.C. Memo. 2003-265.

E.  <u>Integral Part of Regular Business</u>

Where a type of work is part of the principal's regular business, it is indicative of employee status.  <u>See</u> <u>Simpson v. Commissioner</u>, 64 T.C. at 989; <u>Rosemann v. Commissioner</u>, T.C. Memo. 2009-185.  In the instant case, Ever Care's business was to provide homes and services to adults with disabilities. Petitioner's work with Ever Care was managing one of Ever Care's four homes, including hiring staff, grocery shopping for the residents, maintaining the home, and meeting with officials from the Florida licensing agency to ensure that the home was running properly.  When petitioner was not working, he was on call as the first point of contact should a problem arise.  Thus, the work petitioner

performed was an integral part of Ever Care's regular business.  This factor indicates that petitioner was a common law employee.

F.  Permanency of Relationship

A continuing relationship indicates an employment relationship, while a transitory relationship may be indicative of independent contractor status.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273; Rosemann v. Commissioner, T.C. Memo. 2009-185.  The parties' contemplation of a continuing relationship indicates an employment relationship.  Ellison v. Commissioner, 55 T.C. at 155. In contrast, a relationship established to accomplish a specified objective is indicative of an independent contractor relationship.  Id.

Petitioner worked at Ever Care full time for approximately nine months during 2010 and early 2011, at which point he was discharged.  Although there is no evidence of a contractual arrangement between petitioner and Ever Care creating an explicit permanent employment relationship, the relationship in practice was ongoing and was not thought to be temporary or short term by either party.  See Twin Rivers Farm, Inc., v. Commissioner, T.C. Memo. 2012-184, 2012 WL 2533949, at *4.  Rather, petitioner's work was continuing or recurring, and his relationship with Ever Care looked to a long-term relationship rather than one ceasing at the end of a particular job or result.  See Westover v. Stockholders

Publ'g Co., 237 F.2d 948, 952-953 (9th Cir. 1956). Therefore, petitioner's work relationship should be regarded as indefinite, if not permanent. This factor indicates that petitioner was a common law employee.

G. Relationship Contemplated by the Parties

The withholding of taxes is consistent with a finding that an individual is a common law employee. See Packard v. Commissioner, 63 T.C. 621, 632 (1975); Rosato v. Commissioner, T.C. Memo. 2010-39. Ever Care issued petitioner a Form 1099-MISC for 2010 and did not withhold State income tax or Social Security and Medicare taxes from his pay. This indicates that Ever Care intended petitioner to be an independent contractor. However, in treating petitioner as an independent contractor, Ever Care was not a disinterested party, as it benefited by classifying him as an independent contractor and thereby avoided the necessity of filing employment tax returns and paying employment taxes.

H. Conclusion

Considering the record and taking into account all the facts and circumstances, we conclude that petitioner was a common law employee of Ever Care. Accordingly, petitioner is not liable for self-employment tax pursuant to section 1401 on income earned from Ever Care in 2010.

III. <u>Accuracy-Related Penalty</u>

Respondent contends that petitioner is liable for the section 6662(a) penalty because petitioner's underpayment was attributable to a substantial understatement of income tax. Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment of tax that is attributable to a substantial understatement of income tax. A "substantial understatement of income tax" exists if the amount of the understatement of income tax exceeds the greater of 10% of the tax required to be shown on the return or $5,000. <u>See</u> sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs. As relevant here, the term "understatement" means the excess of the amount required to be shown on the return for the taxable year over the amount of tax imposed that is shown on the return. Sec. 6662(d)(2)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. <u>See</u> Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115.

Section 6664(c)(1) provides an exception to the imposition of the section 6662(a) penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances, including the taxpayer's knowledge, education, and experience, as well as the taxpayer's reliance on professional advice. Thomas v. Commissioner, T.C. Memo. 2013-60; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000) (providing a three-prong test to establish reasonable reliance on professional advice), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

We have found that petitioner is not liable for self-employment tax for 2010 related to his income from Ever Care. However, petitioner conceded that for 2010 he failed to report income both from unemployment compensation and from Ever Care. Petitioner's 2010 Federal income tax return was prepared by a C.P.A., but such fact does not, in and of itself, prove that he acted with reasonable cause and

in good faith.  <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. at 99-100.

In that regard, petitioner did not allege that he provided the respective Forms 1099

to his C.P.A. in preparing his 2010 return, nor did he allege that his C.P.A.

determined that this income did not need to be reported.  <u>See</u> <u>id.</u> Petitioner has not

cited any authorities upon which he relied in deciding not to report the income,

and we are confident that there are none.

We therefore hold that petitioner does not come within the reasonable cause

exception of section 6664(c)(1), nor within any other exception, e.g., section

6662(d)(2)(B).  Accordingly, to the extent that the Rule 155 computation shows

that the understatement of income tax exceeds the greater of 10% of the tax

required to be shown on the return or $5,000, petitioner will be liable for the

accuracy-related penalty under section 6662(a).  <u>See</u> sec. 6662(d)(1)(A); sec.

1.6662-4(b)(1), (d), Income Tax Regs.

## Conclusion

We have considered the other arguments of the parties, and those arguments

are not material to our conclusions.

To give effect to petitioner's concessions and our disposition of the disputed issue,

<u>Decision will be entered under</u>

<u>Rule 155</u>.[4]

---

[4] Presumably the parties will reflect by stipulation the $1,463 increase in petitioner's tax withholding determined in the notice of deficiency.