T.C. Memo. 2014-125

UNITED STATES TAX COURT

DARRYL L. JONES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

TARRI M. HARROLD-JONES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18474-11, 18477-11.          Filed June 23, 2014.

<u>Janet L. Bolvin</u>, for petitioners.

<u>Melanie E. Senick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Mrs. Harrold-Jones provided services to Mr. Jones' law

office.  Petitioners elected to file separate Forms 1040, Individual Income Tax

Return, and both reported their activities as if Mrs. Harrold-Jones had been an

[*2] independent contractor.  Respondent issued Mr. Jones a notice of determination of worker classification reclassifying Mrs. Harrold-Jones as an employee of the law office.  Respondent also issued petitioners separate notices of deficiency regarding their 2007 and 2008 returns.  In the notices respondent asserted that petitioners had underreported their 2007 and 2008 income, claimed unsubstantiated net operating loss carryforwards (NOLs), and improperly claimed various deductions.  After concessions[1] the issues for decision are:

---

[1]The parties agree that on his 2007 Schedule C, Profit or Loss from Business, Mr. Jones understated his gross receipts by a total of $27,313. Petitioners concede that Mr. Jones underreported his 2008 Schedule C gross receipts by at least $173,404 and failed to report on his 2007 return offsetting gambling winnings and losses.

Petitioners concede that on his 2007 return Mr. Jones improperly claimed the following deductions:  (1) the standard deduction, (2) depreciation expenses of $7,171, and (3) car and truck expenses of $4,984.  Petitioners concede that on his 2008 return Mr. Jones improperly claimed (1) depreciation expenses of $6,344, (2) car and truck expenses of $4,006, and (3) office expenses of $93,449.  Respondent concedes that Mr. Jones was entitled to deduct $75,750 of contract labor expenses on his 2007 return and $36,000 of rent expense on his 2008 return, amounts his notice of deficiency disallowed.

Petitioners concede that on Mrs. Harrold-Jones' 2007 return she improperly claimed a $30,863 NOL carryforward deduction.  They also concede that on her 2007 and 2008 returns she failed to report offsetting gambling winnings and losses.  Finally, petitioners agree with respondent's adjustments to Mrs. Harrold-Jones' 2007 and 2008 Schedules E, Supplemental Income and Loss.  Respondent concedes that he included a nontaxable deposit of $100 in his calculation of Mrs. Harrold-Jones' 2008 taxable bank deposits.

**[\*3]**   (1) whether respondent properly reclassified Mrs. Harrold-Jones as an employee of the law office.  We hold that he did not;

(2) whether Mr. Jones omitted from Schedule C of his 2008 return $45,095 of gross receipts.  We hold that he did not;

(3) whether Mr. Jones improperly claimed a $179,439 NOL carryforward deduction on his 2007 return. We hold that he did;

(4) whether Mr. Jones improperly claimed a deduction for $208,211 of contract labor expenses on Schedule C of his 2007 return.  We hold that he did but that he is entitled to claim additional deductions to the extent Mrs. Harrold-Jones' unreported income is attributable to payments from him;

(5) whether Mrs. Harrold-Jones underreported her 2007 and 2008 income. We hold that she did;

(6) whether Mrs. Harrold-Jones improperly claimed various deductions on Schedule C of her 2007 and 2008 returns.  We hold that she did; and

(7) whether petitioners are liable for accuracy-related penalties under section 6662(a).[2]  We hold that they are not.

---

[2]Unless otherwise indicated all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4]                    FINDINGS OF FACT

Some facts have been stipulated and are so found. Petitioners resided in Alaska when they filed their petitions. We have consolidated their cases for trial, briefing, and decision.

Mr. Jones is the owner of the Law Offices of Darryl L. Jones (law office). Mrs. Harrold-Jones owns and operates a company called Tarri's Business Services. During the years in question Mrs. Harrold-Jones performed services for the law office and also leased it commercial office space and business equipment. Petitioners each filed Forms 1040 for 2007 and 2008 on which they elected married filing separately status.

## I. Respondent's Worker Classification Determination

Mr. Jones received a notice of determination of worker classification dated May 9, 2011, informing him that respondent had determined that Mrs. Harrold-Jones was an employee during taxable years 2007 and 2008. Petitioners' returns for those years indicated that they believed Mrs. Harrold-Jones was an independent contractor. Mr. Jones reported her payments as contract labor and rent expenses on his Schedule C, and Mrs. Harrold-Jones reported them as gross receipts on her Schedule C. Mrs. Harrold-Jones paid self-employment tax, and Mr. Jones paid no payroll taxes for her.

**[\*5]** On the basis of the determination, respondent sought payroll taxes from Mr. Jones, disallowed a deduction Mrs. Harrold-Jones had claimed for self-employment taxes, and reclassified as wages income Mrs. Harrold-Jones had reported on her Schedules C. Mr. Jones did not file a petition with the Tax Court contesting the determination.

Mr. Jones regularly hires extra workers to help him manage his caseload, and in 2003 he enlisted Mrs. Harrold-Jones to work on two of his largest cases. Petitioners were concerned that working together might damage their marital relationship, so they carefully arranged their business relationship to give Mrs. Harrold-Jones as much freedom as possible. Mrs. Harrold-Jones did not work at the law office; she worked from petitioners' home, which was about 45 miles away. Mr. Jones told Mrs. Harrold-Jones what he needed her to do, but he allowed her to accomplish her tasks in her own time and in her own way. Petitioners agreed that Mr. Jones could discharge Mrs. Harrold-Jones if the arrangement became unproductive.

One of the cases on which Mrs. Harrold-Jones worked involved a protracted criminal investigation against Mr. Jones' client. The client had an eccentric personality but got along well with Mrs. Harrold-Jones, so Mr. Jones appointed her to review documents with the client and keep her calm and focused. Mrs.

**[*6]** Harrold-Jones also performed basic legal research for the law office. She did not receive regular wages; her cases settled in 2007 and 2008, and she received a percentage of the fees Mr. Jones collected.

In addition to the paralegal services Mrs. Harrold-Jones provided, she also kept track of the law office's business receipts. Whenever a member of the office staff received payment from a client, that person would fax a copy of the check or cash to Mrs. Harrold-Jones, who would make a record of the receipt. Mr. Jones did not pay her for these services; this was simply part of her role as keeper of the family finances.

## II. Respondent's Income Tax Deficiency Determinations

Petitioners received separate notices of deficiency also dated May 9, 2011, concerning their 2007 and 2008 returns. Respondent determined that Mr. Jones had underreported his 2008 income and had improperly claimed a number of deductions on his 2007 and 2008 returns. Respondent determined that Mrs. Harrold-Jones had underreported her 2007 and 2008 income and had claimed various improper deductions on her 2007 and 2008 Schedules C and E. Respondent also determined that Mr. Jones and Mrs. Harrold-Jones were liable for accuracy-related penalties under section 6662.

**[*7]** A. <u>Petitioners' Bookkeeping and Tax Reporting Procedures</u>

Before we address the determinations in the notices of deficiency, we will briefly describe petitioners' bookkeeping and tax reporting procedures during the years in issue. Mr. Jones maintained a receipt book at his office in which he recorded client payments. He also kept a handwritten check register on which he recorded and classified his expenditures. All of the income Mrs. Harrold-Jones reported on her returns for the years in issue was from the law office. She used a computer program to track and categorize her expenses.

Darlene Dotzler, a certified public accountant with more than 10 years of experience, prepared petitioners' returns for the years in issue. Petitioners gave Ms. Dotzler their records about two weeks before the filing deadlines for both years. She calculated the law office's total receipts from Mr. Jones' receipt books and his bank statements. She also prepared the Forms 1099-MISC, Miscellaneous Income, the law office distributed to its contract workers, including Mrs. Harrold-Jones. Ms. Dotzler reported as total receipts for Tarri's Business Services the amounts reflected on Mrs. Harrold-Jones' Forms 1099-MISC from the law office. Ms. Dotzler identified deductible expenses by reviewing petitioners' bank statements, Mr. Jones' handwritten check register, and Mrs. Harrold-Jones'

[*8] computer-generated expense report. When Ms. Dotzler had completed the returns, she reviewed them with petitioners for reasonableness.

We now turn our attention to the disputed entries on petitioners' returns.

B. Mr. Jones' 2008 Schedule C Gross Receipts

Mr. Jones reported gross receipts of $298,515 on his 2008 Schedule C. Respondent determined that Mr. Jones should have reported $517,014. Respondent arrived at this total by reviewing Mr. Jones' 2008 bank statements and a report Ms. Dotzler had prepared summarizing his receipt book entries. Respondent identified taxable deposits and transfers to Mr. Jones' bank account totaling $276,638. Respondent also found that Mr. Jones had recorded $240,376[3] of client payments in his receipt book for 2008. Respondent added the totals from these sources to calculate Mr. Jones' gross receipts.

During the years in issue Mr. Jones did not deposit client payments as he received them. He made deposits only when the law office needed money for expenses. Consequently, respondent could not match the payments Mr. Jones recorded in his receipt book with the deposits reflected on the law office's bank

---

[3]Mr. Jones did not record credit card receipts in the books, but Ms. Dotzler included them on his return.

[*9] statements. Respondent concluded that Mr. Jones' deposits represented additional receipts not recorded in the receipt book.

Mr. Jones concedes that he should have reported total receipts of $471,919 on his 2008 Schedule C; the additional $45,095 respondent calculated remains in dispute.

C. Mr. Jones' 2007 NOL Carryforward

Respondent disallowed a $179,439 NOL deduction Mr. Jones claimed on his 2007 return. During respondent's examination Mr. Jones produced copies of his tax returns from 1997 to 2007 (except for those from 2001 and 2003) and a schedule his accountant had prepared detailing the NOLs the law office had generated and used in each of those years. The schedule indicates that the law office generated the disputed NOLs in taxable years 1999, 2000, 2002, 2005, and 2006.

D. Mr. Jones' 2007 Contract Labor Expense Deduction

Mr. Jones reported contract labor expenses of $1,394,961 on his 2007 Schedule C for the law office. Respondent initially determined that Mr. Jones had incurred and paid contract labor expenses of only $1,113,000 in 2007. Respondent has since conceded that Mr. Jones was entitled to an additional $73,750. The parties also now agree that Mr. Jones erroneously included in

[*10] contract labor expenses rental payments he made to Mrs. Harrold-Jones totaling $54,000. Excluding the misclassified rental expenses, $154,211 of the contract labor expenses remain in dispute.

### E. Mrs. Harrold-Jones' 2007 and 2008 Schedule C Gross Receipts

On her 2007 return Mrs. Harrold-Jones reported income of $483,000 ($447,000 on Schedule C and $36,000 on Schedule E). During the examination respondent's revenue agent reviewed Mrs. Harrold-Jones' bank statements and determined she had made taxable deposits of $526,069 in 2007.

Petitioners have prepared a schedule detailing Mrs. Harrold-Jones' 2007 deposits. The schedule is ambiguous about which deposits were taxable. Respondent interprets the schedule to reflect $602,069 in taxable deposits and has consequently adopted that total as the amount Mrs. Harrold-Jones should have reported instead of the $526,069 the revenue agent calculated.

On her 2008 return Mrs. Harrold-Jones reported income of $111,000 ($75,000 on Schedule C and $36,000 on Schedule E). Respondent reviewed Mrs. Harrold-Jones' bank statements and determined she had made taxable deposits of $176,160 in 2008.

[*11] F. Mrs. Harrold-Jones' Home Sale

At trial Mrs. Harrold-Jones testified that she sold a house in 2007 and deposited about $122,000 of the proceeds into her business account. Her 2007 return does not include any information concerning the sale. Respondent's revenue agent noted the deposits in her bank deposits analysis and classified them as nontaxable. On the basis of Mrs. Harrold-Jones' testimony, respondent now contends that on her 2007 return she failed to report capital gain from the sale.

G. Mrs. Harrold-Jones' Miscellaneous Expense Deductions

Mrs. Harrold-Jones failed to provide documentation for a number of deductions she claimed on her 2007 and 2008 Schedules C, and respondent consequently disallowed them. The table below summarizes the deductions respondent disallowed:

| Deduction | 2007 | 2008 |
|---|---|---|
| Supplies expense | $2,299 | $1,127 |
| Office expense | 4,649 | 989 |
| Insurance expense | 4,983 | 8,341 |
| Depreciation expense | 25,420 | 2,949 |
| Car and truck expense | --- | 4,742 |
| Other expense | 4,612 | --- |
| Utility expense | 12,699 | 7,908 |

**[\*12]** Petitioners timely filed petitions contesting the determinations in their notices of deficiency.

OPINION

I. Mrs. Harrold-Jones' Employment Status

A. Jurisdiction

The parties have stipulated that Mr. Jones did not timely file a petition challenging respondent's determination that Mrs. Harrold-Jones was an employee. Accordingly, we will not disturb respondent's assessment of the additions to employment tax he asserted in the notice of determination of worker classification.

Mrs. Harrold-Jones disputed respondent's worker classification determination in the petition she filed in response to her notice of deficiency. We have regularly allowed taxpayers in income tax deficiency proceedings to challenge a change in their worker classification when the change caused any portion of their deficiency. See, e.g., Weber v. Commissioner 103 T.C. 378 (1994), aff'd per curiam, 60 F.3d 1104 (4th Cir. 1995). Respondent's determination that Mrs. Harrold-Jones was an employee of the law office resulted in his disallowance of her self-employment tax deduction, which contributed to her income tax deficiencies. Accordingly, we will review respondent's worker classification determination.

**[*13]** B. Burden of Proof

We presume that a worker classification determination made by the Commissioner is correct, but a taxpayer may rebut that presumption by demonstrating by a preponderance of the evidence that the determination was erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Boles Trucking, Inc. v United States, 77 F.3d 236, 239-240 (8th Cir. 1996) (applying this standard to a worker classification determination).

C. Common Law Test

Whether an individual performing services for a principal is an employee (rather than an independent contractor) is a factual question to which common law principles apply. Weber v. Commissioner, 103 T.C. at 386; see secs. 3121(d)(2), 3306(i). In evaluating the relationship between the principal and the worker, we consider (1) the degree of control the principal exercised over the details of the work; (2) which party invested in the facilities the worker used; (3) the worker's opportunity for profit or loss; (4) whether the principal could have discharged the worker; (5) whether the work was part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Weber v. Commissioner, 103 T.C. at 387. We consider all facts and

**[\*14]** circumstances; no one factor dictates the outcome. <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 270.

    D. <u>Analysis</u>

        1. <u>Degree of Control</u>

The principal's degree of control over the details of the agent's work is the most important factor in determining whether an employment relationship exists. See <u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Weber v. Commissioner</u>, 103 T.C. at 387. In an employer-employee relationship the principal must have the right to control not only the result of the employee's work but also the means and method used to accomplish that result. <u>Packard v. Commissioner</u>, 63 T.C. 621, 629 (1975). The degree of control necessary to find employee status varies according to the nature of the services provided. <u>Weber v. Commissioner</u>, 103 T.C. at 387. When the nature of the work is more independent, a lesser degree of control by the principal may still result in a finding of an employer-employee relationship. <u>Robinson v. Commissioner</u>, T.C. Memo. 2011-99, <u>aff'd</u>, 487 Fed. Appx. 751 (3d Cir. 2012).

Mr. Jones did not control the details of Mrs. Harrold-Jones' work. He told her what he needed done, and she was free to decide how to accomplish it. Mrs. Harrold-Jones' most important responsibility was keeping an important client calm

**[\*15]** in the face of a lengthy criminal investigation. The client was eccentric but got along well with Mrs. Harrold-Jones, so Mr. Jones trusted her to interact with the client and review documents with her. Mr. Jones cared only about the client's satisfaction and did not control how Mrs. Harrold-Jones achieved it. These facts suggest that Mrs. Harrold-Jones was an independent contractor.

### 2. Investment in Facilities

The fact that a worker provides his or her own facilities generally indicates independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 271. Mrs. Harrold-Jones worked from her home office, and the law office did not pay any of her expenses. This suggests Mrs. Harrold-Jones was an independent contractor.

### 3. Opportunity for Profit or Loss

When workers have no opportunities for profit or loss, they are more like employees than independent contractors. See D & R Fin. Servs., Inc. v. Commissioner, T.C. Memo. 2011-252. Mrs. Harrold-Jones did not receive regular wages and received payment only after the cases she worked on had settled. The payments she received depended on the amounts of the settlements in her cases, and she conceivably could have received nothing for her efforts. Thus, she risked

[*16] loss, and her profits were linked to her performance. These facts suggest Mrs. Harrold-Jones was an independent contractor.

### 4. Right To Discharge

Petitioners admit that Mr. Jones had the right to discharge Mrs. Harrold-Jones. This suggests she was an employee.

### 5. Regular Business

When an agent performs her work in the ordinary course of a principal's business, the agent appears to be more like an employee than an independent contractor. Id. Mrs. Harrold-Jones primarily worked on two cases for the law office. She reviewed documents with clients and performed general legal research. These activities were part of the regular business of the law office. These facts suggest Mrs. Harrold-Jones was an employee.

### 6. Permanency of the Relationship

A transitory work relationship may indicate independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273. Mrs. Harrold-Jones worked for the law office only while the two cases Mr. Jones assigned her were ongoing. She has not worked for the law office since the cases settled. Although she worked for the law office for five or six years, her tenure was dependent on the continuation of her cases and could have ended at any time. Her tenure was

[*17] lengthy but by no means permanent. These facts suggest that she was an independent contractor.

### 7. Relationship the Parties Thought They Created

The law office treated Mrs. Harrold-Jones as an independent contractor, and she considered herself an independent contractor. The law office issued her Forms 1099-MISC, and she paid self-employment tax during the years in issue. The record reflects that neither Mr. Jones nor Mrs. Harrold-Jones thought Mrs. Harrold-Jones was an employee. This suggests she was an independent contractor.

### 8. Conclusion

After considering the record and weighing all of the factors, we conclude that Mrs. Harrold-Jones was an independent contractor during the years in issue. Although some of the relevant factors suggest Mrs. Harrold-Jones was an employee, on balance the record indicates that she was an independent contractor. Mr. Jones did not control the details of Mrs. Harrold-Jones' work; she worked from home, and he did not supervise her. Although she ultimately worked for the law firm for several years, her service depended on the length of her cases and could have ended at any time without payment if the cases had not settled favorably. Finally, petitioners did not believe they were creating an employment

[*18] relationship and took pains to avoid such a relationship. We think these factors sufficiently establish that Mrs. Harrold-Jones was an independent contractor, and we hold accordingly.

## II. Petitioners' Income Tax Deficiencies

### A. Burden of Proof

In these cases we address respondent's determinations that petitioners: (1) failed to report income and (2) improperly claimed deductions. The burden of proof analysis is slightly different for each of these issues.

#### 1. Unreported Income

Taxpayers are required to maintain sufficient records to enable the Commissioner to establish the amount of their taxable income. Sec. 6001; sec. 1.6001-1(a) and (b), Income Tax Regs. If such records are lacking, the Commissioner may reconstruct the taxpayers' income by any method that is reasonable under the circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989). We presume the Commissioner's determination is correct when it is based upon a reasonable method. Olsen v. Commissioner, T.C. Memo. 1982-697. Respondent used the bank deposits method to reconstruct petitioners' income. That method is well established and was reasonable under the circumstances. Petitioners bear the burden of proving that the deposits respondent has identified

**[\*19]** do not represent unreported income.  DiLeo v. Commissioner, 96 T.C. 858, 869 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

In calculating Mr. Jones' unreported income, respondent added to Mr. Jones' bank deposits receipts Mr. Jones had recorded in his receipt books.  As we discuss below, this was not reasonable, and we do not presume respondent's estimate is correct to the extent it resulted from the inclusion of these additional receipts.  Consequently, respondent bears the burden of proving that the amounts from Mr. Jones' receipt books represent unreported income in excess of Mr. Jones' bank deposit totals.

### 2. Business Expense Deductions

Section 162 allows taxpayers to claim deductions for "ordinary and necessary" business expenses.  Such deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to them.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

### B. Mr. Jones' Deficiencies

### 1. Mr. Jones' Gross Receipts

Respondent reviewed Mr. Jones' records and determined that he underreported his 2008 gross receipts by $218,499.  Mr. Jones concedes that he

[*20] underreported his receipts by $173,404. We must resolve the dispute concerning the remaining $45,095.

Respondent prepared a bank deposits analysis indicating Mr. Jones had made taxable deposits of $276,638. Mr. Jones produced a summary of his receipt book indicating that he had received $240,376 in client payments during 2008. Respondent tried to trace the payments in the receipt book to Mr. Jones' bank statements but could not. He concluded that the deposits were completely independent of the payments in the receipt book and consequently added the totals together.

Mr. Jones testified that some overlap existed between the bank deposits and the payments he recorded in his receipt book. He claims that respondent could not trace the payments to his bank statements, because he did not deposit the payments as he received them. Respondent's revenue agent admitted that if the bank statement did not reflect a deposit within five days of the payment date in the receipt book, she concluded that the entries did not correspond. Mr. Jones credibly testified that he rarely made deposits within five days of receipt. This explains respondent's inability to reconcile the two sources.

We believe that respondent's method caused him to double count some of Mr. Jones' receipts. We find implausible respondent's conclusion that none of

[*21] Mr. Jones' 2008 deposits corresponded with any payment he recorded in his 2008 receipt book. The Commissioner is entitled to a presumption of correctness when he reconstructs a taxpayer's income using any reasonable method. Olsen v. Commissioner, T.C. Memo. 1982-697 (emphasis added). Respondent's method was reasonable only to the extent it involved reviewing Mr. Jones' bank records. Adding Mr. Jones' receipt book total to his bank deposit total was not reasonable. Accordingly, we do not presume respondent's calculation was correct to the extent it exceeded Mr. Jones' taxable bank deposits.

Respondent has not produced sufficient evidence proving Mr. Jones received and failed to report the additional payments in question. Accordingly, we hold that Mr. Jones did not underreport his 2008 gross receipts by the $45,095 remaining in dispute.

### 2. Mr. Jones' 2007 NOL Deduction

Section 172 permits taxpayers to deduct their NOLs. NOLs result when taxpayers' allowable deductions exceed their gross income. Sec. 172(c). Taxpayers may carry an NOL back to each of the 2 taxable years preceding the taxable year of the loss or carry it forward over each of the 20 taxable years following the taxable year of the loss. Sec. 172(b). Taxpayers may elect to waive the two-year carryback period. Sec. 172(b)(3).

**[\*22]**  On his 2007 return Mr. Jones deducted NOLs he claims he generated in 1999, 2000, 2002, 2005, and 2006.  Mr. Jones elected to waive the carryback period for each of those years.  Respondent disallowed the deduction.

To prevail, petitioners must prove (1) that Mr. Jones suffered NOLs in the relevant years and (2) that those NOLs were not absorbed in the years preceding 2007.  To carry that burden, petitioners must introduce convincing evidence not only of Mr. Jones' NOLs for the relevant years but also of his taxable income for the other years (carry years) in the period beginning with 1999 and ending with 2006.  See, e.g., Leitgen v. Commissioner, T.C. Memo. 1981-525, aff'd without published opinion, 691 F.2d 504 (8th Cir. 1982).

Mr. Jones has produced two forms of documentary evidence concerning his NOL carryforward.  First, he has presented a schedule detailing the NOLs he generated and used from 1997-2007.  Second, he has furnished all his returns from 1997-2007, except those for 2001 and 2003.  Mr. Jones contends that this evidence sufficiently substantiates his entitlement to the NOL carryforward he claimed.  We disagree.

Although the schedule accurately reflects the operating losses Mr. Jones reported on his returns (at least for those in the record), Mr. Jones has presented little evidence concerning the activity that generated those losses or his income for

**[*23]** the carry years. His accountant testified that some of the losses resulted from Mr. Jones' advancing expenses in contingent fee cases. This vague testimony and Mr. Jones' tax returns alone are insufficient to substantiate the NOL deduction. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Owens v. Commissioner, T.C. Memo. 2001-143. Accordingly, we hold that Mr. Jones was not entitled to claim an NOL deduction for taxable year 2007.

### 3. Mr. Jones' 2007 Contract Labor Expense Deduction

Respondent determined that Mr. Jones claimed an excessive contract labor expense deduction. After concessions and excluding expenses misclassified but otherwise deductible, expenses of $154,211 remain in dispute.

Mr. Jones' lone evidence concerning his contract labor deduction is a handwritten check register that does not agree with the amount he claimed on his return. Even if the register agreed with the return amount, it could not by itself substantiate his contract labor expenses, because it provides only the name of the payee and Mr. Jones' classification of the expense. Mr. Jones has presented no invoices or other evidence to substantiate the business purpose of the expenses the register reflects.

Respondent's revenue agent prepared a schedule detailing the amounts he disallowed. Petitioners have not offered any evidence substantiating the purpose

**[\*24]** of the identified payments.  Accordingly, we sustain respondent's disallowance of $154,211 of Mr. Jones' contract labor expense deduction.

    C.  Mrs. Harrold-Jones' Deficiencies

        1.  Mrs. Harrold-Jones' 2007 and 2008 Income

Mrs. Harrold-Jones reported income of $483,000 and $111,000 for 2007 and 2008 respectively.  Respondent's revenue agent reviewed her bank statements and determined she should have reported $526,069 and $176,160 respectively.  Respondent now argues that an exhibit petitioners prepared for trial represents their admission that Mrs. Harrold-Jones should have reported $602,069 for 2007.[4]  Respondent has presented no evidence of his own supporting the increased amount.  We find petitioners' exhibit too ambiguous to represent an admission and consider instead respondent's initial determination that Mrs. Harrold-Jones should have reported income of $526,069 on her 2007 return.

---

[4]The exhibit in question is a summary petitioners' counsel prepared of Mrs. Harrold-Jones' 2007 bank deposits.  The schedule includes all deposits to each of Mrs. Harrold-Jones' two bank accounts.  The total for the first account is $154,700, which appears beside the caption "net deposited income".  Petitioners clearly intend this portion of the schedule to reflect that Mrs. Harrold-Jones made taxable deposits of $154,700 to this account.

The second account's total, $447,369, appears beside the caption "net deposits excluding interest income".  This caption does not indicate petitioners believed Mrs. Harrold-Jones made taxable deposits of $447,369 to the second account.  The caption indicates that the total excludes interest income, but it does not indicate that the other deposits represented taxable income.

**[*25]**  Mrs. Harrold-Jones has had ample opportunity to review the additional taxable deposits respondent identified, but she has presented little persuasive evidence that the deposits were nontaxable.  A $23,219 check from Mr. Jones represents the most significant deposit petitioners claim is nontaxable.  In their brief petitioners claim the payment was a Christmas gift, but at trial Mrs. Jones could not remember the purpose of the deposit despite prompting from her counsel.  She has identified some other deposits she contends are nontaxable, but her argument is based on the payor and the memo line of each check deposited.  This evidence is insufficient to establish the deposits she made were nontaxable.  Accordingly, we sustain respondent's determination of Mrs. Harrold-Jones' 2007 and 2008 taxable income.  However, in keeping with our conclusion that she was not an employee of the law firm, we hold that her additional income was self-employment income, not wages.[5]

Although respondent determined that some of Mrs. Harrold-Jones' additional taxable receipts were from the law office, he did not allow a corresponding increase in Mr. Jones' Schedule C deductions.  We hold that Mr.

---

[5]Respondent has not asserted additional self-employment tax associated with Mrs. Harrold-Jones' unreported income.

**[\*26]** Jones is entitled to deductions to the extent Mrs. Harrold-Jones' increases in income are attributable to payments from him.

### 2. Mrs. Harrold-Jones' Home Sale

Solely on the basis of Mrs. Harrold-Jones' testimony at trial, respondent alleged that Mrs. Harrold-Jones had sold property and failed to report capital gain. Because respondent did not raise this argument until after trial, it constitutes a new matter, and he bears the burden of proving facts sufficient to sustain his position. See Rule 142(a)(1). Mrs. Harrold-Jones testified that she thought the sale occurred in 2007 but was not sure. The record is unclear about when Mrs. Harrold-Jones sold the home, the extent of her gain, and whether the gain was taxable. Respondent has not proved Mrs. Harrold-Jones should have reported capital gain on the home sale for 2007, and we accordingly hold for petitioners on this issue.

### 3. Mrs. Harrold-Jones' Miscellaneous Expense Deductions

Respondent's revenue agent reviewed a number of Schedule C expenses for which Mrs. Harrold-Jones claimed deductions. Mrs. Harrold-Jones produced documentation substantiating only portions of many of the deductions she claimed. Respondent disallowed the portions of the deductions Mrs. Harrold-Jones could not substantiate.

**[*27]**  Mrs. Harrold-Jones has provided a list of checks she wrote during 2008, but she has presented no evidence demonstrating a business purpose for any of the payments.  She has offered expense account detail reports for her 2007 deductions but has presented no supporting documents.  This evidence is insufficient to prove her entitlement to deductions greater than those respondent allowed, and we accordingly sustain his decision to disallow them.

III.  Penalties

A taxpayer may be liable for a 20% penalty on any underpayment of tax attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).  Taxpayers may avoid accuracy-related penalties if they can show they had reasonable cause for their underpayments and that they acted in good faith.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs.

Respondent imposed accuracy-related penalties on petitioners because he determined their underpayments were attributable to substantial understatements of income tax, or in the alternative, negligence.  Petitioners argue that they are not liable for penalties, because they had reasonable cause for their underpayments

[*28] and acted in good faith. The basis for petitioners' reasonable cause defense is their reliance on Ms. Dotzler to prepare their returns.

When taxpayers rely on the professional judgment of a competent tax adviser to whom they have provided all necessary and relevant information, the taxpayers' behavior may be consistent with ordinary business care and prudence. United States v. Boyle, 469 U.S. 241, 250-251 (1985). To establish reasonable cause via reliance on the advice of a tax adviser, taxpayers must prove by a preponderance of the evidence that: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayers provided necessary and accurate information to the adviser, and (3) the taxpayers relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 98-99. Petitioners have established these facts.

Ms. Dotzler is a certified public accountant with more than 10 years of experience. Her credentials and experience sufficiently justified petitioners reliance on her to prepare their returns.

Petitioners provided Ms. Dotzler with complete and accurate financial records during the years in issue. Petitioners furnished bank statements, expense reports, and income records, and they were available at all hours to answer questions. Ms. Dotzler testified that petitioners provided her with sufficient

[*29] information with which to prepare their returns. She admitted that she made several mistakes that petitioners, who lacked tax expertise, could not have detected.

Petitioners credibly testified that they relied in good faith on Ms. Dotzler to prepare their returns. Petitioners reviewed Ms. Dotzler's work and failed to recognize errors she made, but we do not believe their failure was in bad faith. Petitioners have successfully established reasonable cause for their underpayments and accordingly are not liable for accuracy-related penalties.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.